**KIRKLAND v. BURNET, Commissioner of Internal Revenue.**

**No. 5355.**

Court of Appeals of District of Columbia.
Argued Feb. 8, 1932.
Decided March 14, 1932.

Harvey D. Jacob and Walter A. Bolinger, both of Washington, D. C., for appellant.

G. A. Youngquist, Asst. Atty. Gen., and Sewall Key, John MacC. Hudson, C. M. Charest, and William E. Davis, all of Washington, D. C., for appellee.

Before MARTIN, Chief Justice, and ROBB and GRONER, Associate Justices.

GRONER, Associate Justice.

This is a petition for review of a decision of the Board of Tax Appeals. The facts are stipulated and may be summarized as follows:

Petitioner acquired shortly prior to February 28, 1923, as an original subscriber for cash, 3,300 shares of United Baking Company preferred stock at a cost of $330,000, and received as a bonus 3,300 shares of no par value common stock of the same company. The United Company was reorganized in 1924 under the name of Continental Baking Corporation, and petitioner exchanged all of his stock of United Company for Continental stock upon the following basis: For each share of United preferred stock, one share of Continental preferred and one share of Continental class B common, and for each share of United common, one share of Continental class A common and two shares of Continental class B common, as a result of which he received altogether 3,300 shares of preferred, 3,300 shares of class A, and 9,900 shares of class B Continental stocks.

It is stipulated that the exchange was one contemplated by section 203 (b) (2) of the Revenue Act of 1924, 26 USCA § 934 (b) (2), and that no gain or loss resulted from the exchange.

During the year 1925, petitioner sold, at various per share prices, 3,300 shares of preferred stock, 1,200 shares of class A stock, and 3,700 shares of class B stock for an aggregate amount of $556,699.50, thus receiving $226,699.50 in excess of the total of his original investment, while still retaining 2,100 shares of class A stock and 6,200 shares of class B stock. The market values of the stocks acquired by petitioner in the exchange at that time were $92.50 per share for preferred stock, $109.75 per share for class A stock, and $20.75 per share for class B stock. The Commissioner, in determining the gain realized, apportioned the original cost, namely $330,000, among the classes of stock received in exchange, using as a basis the market value of the stocks received in the exchange as of the date of the exchange. The result of this was to make it appear that each share of Continental preferred acquired in the exchange cost petitioner $34.972, and each share of class A $41.493, and each share of class B $7.845 (1 preferred $34.972, 1 class A $41.493, 3

class B $23.535, equal to $100, the cost of 1 preferred and 1 common in the old company). Upon the basis of cost so allocated, the Commissioner increased petitioner's taxable income from $226,699.50, as reported by him, to $362,473.80, and determined a deficiency in tax of $16,834.29. The Board of Tax Appeals approved the Commissioner's determination.

■ It is stipulated it was impracticable at the time of the original purchase to apportion the $330,000 paid for the United Company's stocks between the preferred and common stocks acquired at that time; in other words, that there was no practicable way in which to ascertain the per share cost to petitioner of the preferred and common stocks of the United Company, respectively.

Petitioner now insists that, since it is admitted that at the time of his original purchase it was impracticable to apportion the purchase price between the preferred and common stock of the United Company, he is entitled to offset his total original cost against the sale price of the stocks sold in 1925 before he can be said to have realized any profit, and relies upon article 39, Regulations 65, construing the Revenue Act of 1924, which is as follows: "* * * Where common stock is received as a bonus with the purchase of preferred stock * * * the total purchase price shall be fairly apportioned between such common stock and the * * * (preferred stock) purchased for the purpose of determining the portion of the cost attributable to each class of stock, * * * but if that should be impracticable in any case, no profit on any subsequent sale of any part of the stock * * * will be realized until out of the proceeds of sales shall have been recovered the total cost. * * *"

■ The Commissioner, on the other hand, insists that the rule is applicable only where the original stock is sold or disposed of in part and not as a whole. Hence, he says, the basis of the old stock is unaffected by any question as to the practicability of allocating its cost to the two classes, since all that stock, preferred and common, was exchanged as a whole for the new stock, which we understand to mean that the 3,300 shares of preferred and 3,300 shares of common stock in the original company were exchanged as a whole for the 3,300 shares of preferred, 3,300 shares of class A, and 9,900 shares of class B of the new company; but this argument is not tenable, for the reason that it assumes a condition which does not exist, since, admittedly, it is not a fact that the old stock was exchanged as a whole for the new stock, but, on the contrary, one share of the old preferred stock was exchanged for a definite number of shares of new stock, and one share of the old common stock was exchanged for a different number and class of shares of the new stock, as a consequence of which, in order to determine the unit or per share cost to petitioner of the several classes of shares of new stock, it is necessary to ascertain the cost to him of the shares of old stock, and since, by stipulation, this is impossible, it follows that it is equally impossible to ascertain the cost to him of the new shares, respectively, and therefore we have a case precisely under the terms of the Regulation, and the Regulation, being in aid of the statute and not contrary to any of its provisions, has all the force and effect of law. Maryland Casualty Co. v. United States, 251 U. S. 342, 349, 40 S. Ct. 155, 64 L. Ed. 297.

It was just this result that the Commissioner tried to avoid by the computation which he adopted, for by it he sought, by using the market values of the new shares as of the time of the exchange, to ascertain their cost, respectively, to petitioner. By this method he determined the cost to petitioner of Continental preferred as $34.972, the cost of class A common as $41.493, and the cost of class B common as $7.845 per share. Since one share of Continental preferred and one share of Continental class B were exchanged for one share of United preferred, it follows, on the basis of his computation, that the cost to petitioner of United preferred was $42.82, and since one share of class A Continental and two shares of class B Continental were exchanged for one share of United common, that the cost to petitioner of United common was $57.18, and in this way the Commissioner undertook to do what, he stipulated, it was impracticable to do, and this impracticability, which obviously was real and not imaginary, we think, is fatal.

When the Commissioner came to ascertain the amount of gain, he found the same to be the difference between the cost to petitioner of each share of the several classes of stock, respectively, in the new company acquired in the exchange and the cash price received for each share of each such class when sold. In other words, having ascertained the cost of one share of new preferred stock, he figured the gain, when sold, as the difference between that price and the sale price. Assuming that the general method of apportioning the cost of a whole among the several parts exchanged for the whole, in proportion that the value of

each part as of the date of exchange bears to the total value of the parts as of that date, was correct, nevertheless the Commissioner erred in treating the exchange as made as a whole. Instead of having the sum of $100, the cost of one share of preferred and one share of common of the old stocks, to be apportioned among one share of preferred, one share of class A, and three shares of class B of new stock, he had in fact an unknown cost of one share of old preferred to be apportioned among one preferred and one class B of new, and an unknown cost of one share of old common to be apportioned among one class A and two class B of new. Not only is the relation of the old preferred to the old common as of the date of purchase not known, but likewise it is not known whether this relation remained constant; that is to say, whether the advance in value of preferred and common was in the same ratio as the stocks bore to each other at purchase; indeed, the probabilities are otherwise. Without this, it follows that it is impracticable, even under the method adopted by the Commissioner, to apportion the original cost among the stocks acquired in the exchange, and it was just to meet a condition such as this that article 39 of Regulations 65 was adopted.

The Board of Tax Appeals, in its opinion, agrees that, in view of the impracticability of apportionment of cost between preferred and common stock when acquired, Regulations 65 would at first seem to be conclusive, but the Board says that is not the case here, because of "the possibility that some future event might afford a practicable and equitable basis upon which an apportionment could be made," and points to the exchange occurring in 1924 as the "event." This, we think, ignores not only the spirit of the Regulation but the spirit of the statute.

Section 203 (b) (2) applies to reorganization and exchange (as in this case), and provides that in such circumstances no gain or loss shall be recognized. Section 204 (a) (6) of the Act, 26 USCA § 935 (a) (6), provides if the property (in this case the shares of stock in the new company) was acquired upon an exchange described in subdivision (b) of section 203 (as we have seen it was), "the basis shall be the same as in the case of the property exchanged"; that is to say, while there is a change in form there is none in substance; or, stated differently, in the case of such exchanges neither the taxpayer nor the government benefits or loses from a taxing standpoint as a result thereof, and in this view the undoubted purpose of Congress, we think, was to treat such an exchange as a paper transaction, and to await the ultimate result before applying the tax.

If, at the time of the exchange, there had been, as of that date, that is to say, as of a time a year subsequent to the original acquisition of the stock, a known market value for each of class of stocks in the old company and petitioner had sold on this market, it would not be contended that petitioner would be liable for any tax until after he had, as article 39 of Regulations 65 provides, recouped the amount of his original investment.

Or, to suggest another illustration, if, instead of exchanging his stock for other stock, he had sold all his preferred stock in the old company at a sufficient price to reimburse himself for his original investment, and had had left on his hands all his common, it would not be contended that the transaction was not controlled by the provisions of article 39. Likewise, if he had sold half his preferred and half his common on a per share basis, and the aggregate was equal to the amount of his original investment, no gain or loss would have then resulted.

This is true because the regulation is drawn in recognition of the fact that there is no tax without "gain," and a necessary factor in determining gain is ascertainment of cost. And so the regulation provides that where more than one class of securities is bought for a single price and it is not practicable to allocate a definite part of the price to any one class, the taxpayer, in the event he sells a part, shall not account for gain or loss until he has recovered his whole investment. The subsequent ascertainment of separate value of the securities purchased is therefore not enough unless it affords the means thereby of doing what prior thereto was impossible. This, we think, is not true in this case, and, if we are correct in that regard, it follows, we think, that the "event" of which the Board speaks, viz., the exchange, did not affect the situation or make inapplicable the Regulation on which petitioner relies. Petitioner has returned as gain the total excess received over cost. As he sells from time to time the remainder of his shares, the whole amount received will be gain, and taxable, and so as the gain accrues the tax applies, which we mention merely to show that the rule invoked by petitioner is not unfair.

Reversed.