## TAYLOR v. COMMISSIONER OF INTERNAL REVENUE.

### No. 283.

Circuit Court of Appeals, Second Circuit.

May 7, 1934.

CHASE, Circuit Judge, dissenting.

Trumen Henson, of New York City, for appellant.

Frank J. Wideman, Asst. Atty. Gen., and Sewall Key and Walter L. Barlow, Sp. Assts. to Atty. Gen., for appellee.

Before MANTON, L. HAND, and CHASE, Circuit Judges.

L. HAND, Circuit Judge.

This appeal (petition to review) is from an order of the Board of Tax Appeals fixing a deficiency in the taxpayer's income tax for 1928, under the following circumstances: In October, 1927, he bought the shares of three small lighting companies in Vermont, and all the assets of a fourth. For all four he paid $96,000, and he at once organized a separate company to which in consideration of all its shares he conveyed the assets of the fourth company. Thus armed with the shares of four operating utility companies, he organized a holding company which, in exchange for his shares, issued to him its entire share capital; that is to say: 1,000 shares of preferred stock, without par value, but entitled to $100 on any distribution, callable at 105, and bearing a cumulative dividend of 6%; 2,500 shares of non-par "Class A" stock, redeemable at thirty-five dollars; 5,000 shares of non-par "Class B" stock. In May, 1928, another holding company which was on the look-out for job-lots of utility shares with which to fill out some projected issues, bought from the taxpayer's holding company all the shares of the four operating companies for $195,000. He thereupon retired the full issue of preferred shares for $99,000, leaving $96,000 in the company's treasury, and having all the Class A and Class B shares and $99,000 in his own hands. The question is what is the right "basis" of the preferred shares for calculating taxable gain. The Commissioner found this by dividing the original aggregate cost of the properties, $96,000, in the same proportion that the amount at which the preferred shares were redeemed, $99,000, bore to the price paid for all the assets of the holding company, $195,000. This resulted roughly in allocating $49,000 as "basis" and $47,000 as gain. This the Board affirmed and the case comes here on the taxpayer's appeal.

The Revenue Act of 1928, like its predecessors, gave no clue to the proper treatment of such a problem. The general sections (sections 111–113 [26 USCA §§ 2111–2113]) did

not even suggest a solution, and from 1918 forward the Commissioner promulgated a series of regulations to cover it, which have been substantially the same. Article 39, Regulations 45, Revenue Act 1918; article 39, Regulations 62, Revenue Act 1921; article 39, Regulations 68, Revenue Act 1924; article 39, Regulations 69, Revenue Act 1926; article 58, Regulations 74, Revenue Act 1928. That issued under the Revenue Act of 1928 appears in the margin.[1] The meaning of the word, "bonus," as there used is obscure. Obviously it does not mean that the actual value of the bonds or preferred shares must exhaust the whole purchase price; if it did, there could never be any apportionment. Possibly it is the par of the prior securities; but it is not clear whether the rate of interest or dividend should not come into the computation. For example, suppose that preferred shares with a par of $100 carry a noncumulative dividend of only four per cent. However well secured they might be, they would not sell at par in most markets. Should such shares be estimated at par in determining whether the common shares are a "bonus," or should they be taken at their value, if issued by a company of the most impeccable solvency? These questions we leave unanswered because both sides assume that the common shares at par were a "bonus," as almost certainly they were, whether their par be taken, or the value of a perfectly secure issue of like kind. There was little possibility that in 1927 a preferred share, carrying cumulative 6% dividends, and callable at $105, in an absolutely sound company, would not have been worth $96.

The preferred shares of the taxpayer's holding company were by no means in that class, and we agree with the Board in thinking that the common shares probably had a value. What that value was we have no means of knowing; the question is whether the taxpayer has shown that at least it was less than the Commissioner's allocation. In deciding the contrary the Board invoked the burden of proof, a rubric which has saved the Treasury many a doubtful case, but which can easily be pushed to deny taxpayers privileges plainly theirs. Here it seems to us a complete non-sequitur to suppose that because in May,

1928, the preferred shares were worth about one-half of a total of $195,000, they were worth only that proportion of $96,000 in October of 1927. The preferred shares were a first call upon any income up to $6,000; they could not be redeemed for less than $105,000, nor could the common shares get anything in distribution until $100,000 had been paid on them. That such an issue was worth only $49,000 out of $96,000, leaving $47,000 for the common shares, is to our minds too unreasonable to require positive disproof. And when it is attempted to justify such a conclusion affirmatively by the fact that eight months later that was the proportion between the two issues in an aggregate value of nearly twice as much, its arbitrary nature becomes even more apparent. Kirkland v. Burnet, 61 App. D. C. 88, 57 F.(2d) 608.

Nevertheless, while we think that the finding of the Commissioner was wrong, it does not follow that any allocation of the original consideration was "impracticable." True, the shares had just been issued and had therefore never paid a dividend; but the subsidiaries may have had a substantial history and their incomes been reasonably predictable; indeed the evidence was that while the taxpayer owned them, they had a joint income at the yearly rate of $9,000 or $10,000, though whether this was gross or net, did not appear. At any rate we cannot say that it was impossible to ascertain the income of the holding company, or with that as datum to estimate the values of the preferred and common shares in October, 1927. The taxpayer made no effort to prove that apportionment was "impracticable," excusing himself by exceedingly vague and unsatisfactory affidavits of the existence of an oral stipulation which the Commissioner does not admit to have been made, and which we may not consider. If the burden of proof goes so far as to demand not only that the taxpayer show that the deficiency assessed against him is wrong, but what is the proper deficiency, or that there should be none at all, the decision was right, even though we know that the tax is too high. In an action to recover taxes unlawfully collected the burden does go so far. United States v. Anderson, 269 U. S. 422, 443, 46 S. Ct. 131, 70 L. Ed. 347; Reinecke v. Spalding,

---

[1] Art. 58. *Sale of stock and rights.*— * * * Where common stock is received as a bonus with the purchase of preferred stock or bonds, the total purchase price shall be fairly apportioned between such common stock and the securities purchased for the purpose of determining the portion of the cost attributable to each class of stock or securities, but if that should be impracticable in any case, no profit on any subsequent sale of any part of the stock or securities will be realized until out of the proceeds of sales shall have been recovered the total cost.

280 U. S. 227, 233, 50 S. Ct. 96, 74 L. Ed. 385. But the reason for this is obvious; a plaintiff, seeking an affirmative judgment measured in dollars, must prove how much is due. His claim is for money paid and he must show that every dollar he recovers is unjustly withheld. So it is not enough merely to prove that the tax as a whole was unlawful; some of the dollars he paid may nevertheless have been due. But this reasoning does not apply when the proceeding is to review an assessment. Although that does indeed partake of the nature of a judgment, and the taxpayer has the burden of proving that it was wrong, after he has done so, he need not, at least under ordinary principles of procedure, prove that he owed no tax, or what was the tax that he did owe. The original assessment rested upon a finding, presumptively correct, but the presumption of its correctness does not extend to other findings which the Commissioner has never made. Any other result would invert the ordinary rules of procedure by imposing a burden of establishing a negative upon the obligor; indeed of disproving the existence of all possible obligations. It must be owned however that the cases are not all in accord, though we do not think that Burnet v. Houston, 283 U. S. 223, 227, 51 S. Ct. 413, 75 L. Ed. 991, should be counted among those which impose such a burden; the facts were quite otherwise. Usually it has been a deduction, not an item of gross income, that has been in question. Saxman C. & C. Co. v. Com'r, 43 F.(2d) 556 (C. C. A. 3); Atlantic Bank & Trust Co. v. Com'r, 59 F.(2d) 363 (C. C. A. 4); Lightsey v. Com'r, 63 F.(2d) 254 (C. C. A. 4). And conceivably as to deductions the rule should be the same as in an accounting where the debtor has the burden of proving all credits. If that be the explanation, this is not such a case, because there is no taxable "gain" until both the receipt and the "basis" are found. But if it be not the explanation, at least the law is not settled, because several Circuit Courts of Appeal have refused to push the burden so far. Having once decided that the finding of the Commissioner was positively wrong, they have sent the cause back for a new hearing, although the taxpayer had not proved enough to allow them finally to dispose of the case. Collin v. Com'r, 32 F.(2d) 753, 754 (C. C. A. 6); Rhode Island Hospital Trust Co. v. Com'r, 29 F.(2d) 339 (C. C. A. 1); Strother v. Com'r, 55 F.(2d) 626, 632, 633 (C. C. A. 4); Underwood v. Com'r, 56 F.(2d) 67, 72, 73 (C. C. A. 4); Eau Claire, etc., Co. v. Com'r, 65 F.(2d) 125 (C. C. A. 7); Ferguson v. Com'r, 59 F.(2d) 893 (C. C. A. 10). The statute itself (Revenue Act 1926, § 1003) provides for a rehearing if "justice may require" (section 1226 (b), title 26, U. S. Code, 26 USCA § 1226 (b). It is impossible to suppose that "justice" requires one only in case the Commissioner has failed to make out his case.

Order reversed; cause remanded for further proceedings in conformity with the foregoing.

CHASE, Circuit Judge, dissents without opinion.