T.C. Memo. 2000-120


UNITED STATES TAX COURT


SHARON PURCELL DILEONARDO, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 5508-97.                    Filed April 5, 2000.


        P is a one-sixth income beneficiary of a trust.  In
State court, P filed objections to an accounting by the
trustee.  The State court (1) ruled against P, (2) required
P to compensate the trustee, the other beneficiaries, and a
guardian ad litem for their expenses in dealing with P's
objections, and (3) directed the trustee to use P's share of
the trust distributions to accomplish this compensation.  P
reported as income her share of the trust's income and
deducted the court-ordered payments.

        <u>Held</u>:  The origin and character of the claim resulting
in P's payments was the trustee's filing of an accounting,
proposing a distribution, and acknowledging that an argument
could be made for a different apportionment of the proposed
distribution; P's payments are deductible under sec. 212(1)
and (2), I.R.C. 1986.

Sharon Purcell DiLeonardo, pro se.

Alan E. Staines, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION

CHABOT, Judge:  Respondent determined deficiencies in Federal individual income tax and an addition to tax under section 6651(a)(1)[1] (late filing of tax return) against petitioner as follows:

| Year | Deficiency | Addition to Tax Sec. 6651(a) |
|------|-----------|------------------------------|
| 1993 | $3,517 | $879 |
| 1994 | 18,887 | 0 |

---

[1]     Unless indicated otherwise, all section and chapter references are to sections and chapters of the Internal Revenue Code of 1986 as in effect for the years in issue.

After concessions by both sides,[2] the issue for decision is whether under section 212 petitioner may deduct payments she made as ordered by a California court.

FINDINGS OF FACT

Some of the facts have been stipulated; the stipulations and the stipulated exhibits are incorporated herein by this reference.

When the petition was filed in the instant case, petitioner resided in Santa Rosa, California.

The Trust

Petitioner is an income beneficiary of a testamentary trust established by the will of petitioner's grandfather, L.O. Ivey. This testamentary trust is hereinafter sometimes referred to as the Trust. L.O. Ivey's will was admitted to probate in 1978.

----

[2] Petitioner concedes that she is liable for an addition to tax under sec. 6651(a) for 1993, except insofar as our redetermination of the deficiency for that year reduces or eliminates the base for calculation of this addition to tax. Petitioner also concedes that she is not entitled to deductions under sec. 162.

Respondent concedes that, if petitioner's expenditures are qualitatively deductible, then the amounts that petitioner deducted are the correct amounts. In the pleadings respondent suggested, and in the opening statement respondent plainly contended, that allowance of the claimed deduction would frustrate California public policy. On opening brief, however, respondent concedes this issue.

By July 1, 1991, the other income beneficiaries of the Trust were petitioner's mother, Helen True Purcell, hereinafter sometimes referred to as Purcell, and petitioner's two siblings. Purcell and petitioner's two siblings are hereinafter sometimes collectively referred to as the other beneficiaries[3]. Purcell was entitled to receive 50 percent of the Trust's income. Petitioner and her two siblings were each entitled to receive one-sixth of the Trust's income. See infra note 3.

Crocker National Bank acted as trustee for the Trust until May 31, 1986, when Crocker National Bank was acquired by Wells Fargo Bank. Wells Fargo Bank, hereinafter sometimes referred to as the Trustee, has acted as the Trust's Trustee since May 31, 1986.

Petitioner's husband, Joseph DiLeonardo, hereinafter sometimes referred to as DiLeonardo, is licensed by California as both an attorney and a real estate broker.

The Third Account and the Objections

On July 5, 1991, the Trustee filed with the Superior Court of the State of California for the County of Los Angeles (hereinafter sometimes referred to as the California Court), its

---

[3]    There also was a lifetime annuitant, who was entitled to receive $100 per month. This annuitant did not play a role in the proceedings described infra; her interest was sufficiently insignificant so that we join the parties in ignoring it for purposes of analyzing the parties' dispute in the instant case.

third accounting (hereinafter sometimes referred to as the Third Account), covering the period October 1, 1987, through April 15, 1991. Petitioner and DiLeonardo each received a copy of the Third Account.

Among other matters in the Third Account, the Trustee recommended a distribution of "delayed income" with respect to the sale of L.O. Ivey's residence after the death of L.O. Ivey's widow, who had lived in the residence rent-free pursuant to a court-ordered probate homestead. The Trustee calculated the amount payable to each of the income beneficiaries, but acknowledged that a different formula would result in a different, smaller, current distribution. The Trustee asked the California Court to provide instructions on this matter and, in connection therewith, to appoint a guardian ad litem to represent minor and unborn contingent remainder beneficiaries. The Trustee also proposed that the net profit from the sale of that residence be allocated half to income and half to principal.

After reviewing the Third Account, DiLeonardo advised petitioner to contact an attorney specializing in probate matters to review the Third Account, make recommendations, and represent petitioner as needed. DiLeonardo contacted several attorneys on petitioner's behalf.

Two attorneys, John D. Burroughs, hereinafter sometimes referred to as Burroughs, and Evan W. Field, hereinafter sometimes referred to as Field, from the law firm of Burroughs,

Froneberger & Field, reviewed the Third Account.  Burroughs and Field agreed to represent petitioner if any action were necessary regarding the Third Account.  Petitioner paid a small amount to Field and Burroughs to do some investigative and preliminary work.  Field and Burroughs agreed to a contingency fee arrangement for their representation of petitioner concerning the Third Account.

Field told petitioner that he had spoken with his father-in-law, Professor Halbach, regarding the Third Account.  Field told petitioner that Professor Halbach was the former Dean of Boalt Hall School of Law at the University of California and a foremost expert on trusts in the United States.  Field also told petitioner that Professor Halbach recommended that petitioner be very aggressive in objecting to the Third Account.

Thereafter, DiLeonardo, Burroughs, and Field recommended that petitioner object to the Third Account in two ways: (1) Object to the actions of the Trustee during the period covered by the Third Account and ask for reductions in the Trustee's fees or that the Trustee be surcharged, and (2) object to the Trustee's request for authority regarding new actions.  Burroughs prepared Objections to the Third Account and Report of the Trustee, hereinafter sometimes referred to as the Objections, for petitioner.  Two meetings between DiLeonardo, Burroughs, Field, and petitioner were held before petitioner signed the Objections.

It appears that, after the Trustee's first account, petitioner filed objections to that account, and those objections resulted in substantial reductions in the Trustee's fees. At that time, the Trustee tried to have sanctions imposed on petitioner but was unsuccessful in that attempt. With this experience in mind, DiLeonardo, Burroughs, Field, and petitioner discussed whether the Trustee would move for sanctions or an award of litigation costs against petitioner if she filed the Objections. DiLeonardo, Field, and Burroughs represented to petitioner that this would not happen because the Objections were good on their face and would not subject petitioner to any kind of sanction, penalty, or litigation costs award. After consultation with DiLeonardo, Field, and Burroughs, and after assurances that the Objections were reviewed by Professor Halbach and investigated by another law firm, petitioner signed the Objections.

On August 7, 1991, petitioner filed the Objections with the California Court. Petitioner made several Objections to the Third Account, including the following:

Guardian ad litem. Petitioner agreed that a guardian ad litem should be appointed, but objected to the Third Account by asking the California Court to delay authorizing the distribution until the guardian was appointed and had sufficient time to

review the Third Account, appear before the California Court, and make appropriate objections.

Insufficiently productive assets. Petitioner contended that the Trustee failed to earn a normal rate of return on trust assets, focusing on two of these assets. One asset was the residence which had been occupied by L.O. Ivey's widow after his death. Petitioner contended that the Trustee failed to make the property productive after the death of L.O. Ivey's widow and that the Trustee sold the residence for only $3.5 million, although the residence had been appraised at $5.2 million and there had been offers to buy the residence for more than $3.5 million. The other asset was a series of gypsum mining claims located in Nevada. L.O. Ivey owned the claims for 10 to 12 years before his death. For nearly 15 years the Trust did not receive income from the claims but did incur expenses associated with them. The Trustee disposed of the claims after petitioner filed the Objections.

Charges of bias and fraud. Petitioner charged that the Trustee failed to protect the interests of income beneficiaries with regard to the residence that had been occupied by L.O. Ivey's widow, and that, to make up for this, the Trustee proposed to distribute the proceeds of the sale of that residence in a way that would fail to protect the interests of the remainder beneficiaries. Petitioner proposed that the income

beneficiaries' lost income be made up for out of the Trustee's assets and not by taking away what should go to remainder beneficiaries. Petitioner charged that the Trustee should have opposed homestead status for the residence of L.O. Ivey's widow, and that the Trustee's failure to oppose homestead status was a breach of fiduciary duty which may have resulted from "an extrinsic fraud". The asserted extrinsic fraud involved a conflict of interest in that the conservator for L.O. Ivey's widow (the conservator also was a residual beneficiary of the widow's estate) was married to a partner in the law firm that represented the Trustee, as a result of which the Trustee acted, or failed to act, in a manner that favored L.O. Ivey's widow over the other beneficiaries of the Trust.

Investments too aggressive. Petitioner charged that there was a large turnover in the Trust's investment portfolio, and contended that she should be given the opportunity to investigate the situation.

Self-dealing. Petitioner charged that the Trustee improperly deposited substantial cash amounts in the Trustee's own money market accounts and contended that there should be an examination of comparative interest rates and costs to determine whether income beneficiaries were disadvantaged by these deposits.

The Litigation, Award of Costs.

On November 8, 1991, the California Court granted summary adjudication in favor of the Trustee on most of the Objections. On November 12, 1991, the remaining Objections were withdrawn by Burroughs.

After the remaining Objections were withdrawn, the Third Account was approved by the California Court. The California Court also ordered that the extraordinary distributions provided for in the Third Account be held pending the other beneficiaries' motion for litigation costs. In December 1991, the other beneficiaries moved against petitioner for litigation costs.

The California Court awarded litigation costs to the other beneficiaries, the Trustee, and the guardian ad litem, stating as follows:

> F. Based upon all of the evidence presented at trial, Sharon DiLeonardo's failure to explain or deny by her testimony the evidence in the case against her, the matters of which judicial notice was taken, and the Court's prior issue-preclusion sanction, the Court finds: each and all of Sharon DiLeonardo's Objections to the Third Account were frivolous; she knew that her Objections to the Third Account were frivolous; she knew that the Third Account was proper; she would have objected to essentially anything that was included within the Third Account; that each and all of her Objections to the Third Account were totally and completely without merit; that each and all of her Objections to the Third Account were made in bad faith; that each and all of her Objections to the Third Account were made for the sole purpose of harassing opposing parties; that each and all of her Objections to the Third account were made willfully and maliciously to injure the trustee or the beneficiaries

of the Trust; that each and all of her Objections to the Third Account were intended by her to be punishment and vindictive; that Sharon DiLeonardo's bad faith was compounded by her stonewalling on discovery; and that she willfully suppressed material evidence.

The California Court ordered petitioner to pay the litigation costs, plus interest, of the other beneficiaries, the Trustee, and the guardian ad litem. Petitioner's obligations under this order are hereinafter sometimes referred to as the Payments. The California Court further ordered that the Payments be paid out of petitioner's portion of distributions from the Trust. The amounts the Trustee was directed by the California Court to pay, and the payees, are summarized in Table 1.

Table 1

| Payee | Amount |
|---|---|
| Other beneficiaries | $203,474.91 |
| Trustee and guardian ad litem | 147,040.75 |
| Total | 350,515.66 |

The California Court's order was affirmed by the California Court of Appeal for the Second District. Estate of Ivey v. DiLeonardo, 28 Cal. Rptr. 2d 16 (Ct. App. 1994).

Tax returns

Table 2 shows selected items from petitioner's tax returns.

Table 2

| | 1993 | 1994 |
|---|---|---|
| Income from the Trust | $49,546.00 | $113,478.00 |
| Adjusted gross income | 50,571.93 | 120,540.70 |
| Litigation cost deduction (before 2-percent floor) | 53,000.00 | 159,718.00 |

No part of the Payments constitutes a capital expenditure. No part of the Payments is allocable to a class of income wholly exempt from income taxes. No part of the Payments is interest on indebtedness incurred or continued to purchase or carry obligations the interest on which is wholly exempt from income taxes.

Petitioner's obligation to make the Payments arose from the Trustee's filing of the Third Account. The Payments were incurred in entirety for, and are proximately related to, the production or collection of income, or for the management, conservation, or maintenance of property held for the production of income.

OPINION

Petitioner contends that the Payments are deductible under section 212 as expenses arising from an attempt to produce income or to preserve, maintain, and conserve property held for the production of income.

Respondent contends that the Payments are not deductible under section 212 because they were not ordinary and necessary --in particular, respondent states that the Payments were not made "with the purpose and reasonable expectation that income would flow directly therefrom to" petitioner (sec. 212(1)), and that petitioner's "immediate purpose" for making the Payments was not "the management, conservation, or maintenance of property held for the production of income", sec. 212(2). In addition,

respondent contends that, under the "'origin of the claim' test", the Objections did "not constitute the relevant litigation", but that--

> The relevant litigation is that which was initiated by those persons who opposed petitioner's Objections to the Third Account and who prosecuted both a motion for monetary sanctions and a petition to charge petitioner's share of the trust's income with the payment of such monetary sanctions.

In addition, respondent contends that the California Court--

> determined that the underlying reasons for petitioner's objections to the trustee's accounting were vindictive, intended as punishment, initiated in bad faith, and based on petitioner's animosity with respect to the law firm representing the trustee.

Respondent concludes from this that section 262 prohibits deductions for petitioner's Payments. In the alternative, respondent states that if the payments meet the "ordinary and necessary requirement" of section 212, then they are nevertheless not deductible because petitioner failed to carry her burden of allocating the payments between deductible and nondeductible portions.

Petitioner responds that (1) she had to make the payments in order to receive income from the Trust, thus meeting the "ordinary and necessary" requirement; (2) the origin of the claim is petitioner's filing of the Objections, an income-focused act that does not fall under section 262; and (3) the entire obligation to make the Payments arose from the one document--the

Objections--"and therefore all fees arose from the litigation and are deductible."

We agree with petitioner's conclusions and part of petitioner's analysis.

Section 212[4] allows a deduction for expenses to produce or collect income or to manage, etc., property held for the production of income.

Section 212 is coextensive in most respects with section 162(a), and taxpayers may not deduct expenses under section 212 that could not be deducted under section 162(a) were the expenses connected to a trade or business.  See Trust of Bingham v. Commissioner, 325 U.S. 365, 373-376 (1945) (discussing the predecessors of secs. 212 and 162(a)); Guill v. Commissioner, 112 T.C. 325, 328 (1999).  As we have noted:

> "[E]xcept for the requirement of being incurred in
> connection with a trade or business," however, a deduction
> under section 212 "is subject * * * to all the restrictions
> and limitations that apply in the case of the deduction

---

[4]    Sec. 212 provides, in pertinent part, as follows:

SEC. 212. EXPENSES FOR PRODUCTION OF INCOME.

       In the case of an individual, there shall be allowed as
a deduction all the ordinary and necessary expenses paid or
incurred during the taxable year--

              (1) for the production or collection of income;

              (2) for the management, conservation, or
       maintenance of property held for the production of
       income; * * *

under * * * [section 162(a)] of an expense paid or incurred in carrying on any trade or business." [Estate of Davis v. Commissioner, 79 T.C. 503, 507 (1982) (quoting from H. Rept. 2333, 77th Cong., 2d Sess. (1942), 1942-2 C.B. 372, 430; S. Rept. 1631, 77th Cong., 2d Sess. (1942), 1942-2 C.B. 504, 571, the legislative history to the predecessor of section 212).

For purposes of the instant case, section 212 must be applied in the light of section 262(a),[5] which generally disallows deductions for personal expenses. In United States v. Gilmore, 372 U.S. 39, 44, 45-46 (1963), the Supreme Court described as follows the relevant relationships between the 1939 Code predecessors of sections 162(a) (sec. 23(a)(1)), 212 (sec. 23(a)(2)), and 262(a) (sec. 24(a)(1)):

I.

For income tax purposes Congress has seen fit to regard an individual as having two personalities: "one is [as] a seeker after profit who can deduct the expenses incurred in that search; the other is [as] a creature satisfying his needs as a human and those of his family but who cannot deduct such consumption and related expenditures."[11]  The Government regards § 23(a)(2) as embodying a category of the expenses embraced in the first of these roles.

* * * * * * *

A basic restriction upon the availability of a § 23(a)(1) deduction is that the expense item involved must be one that has a business origin. That restriction not only inheres in the language of § 23(a)(1) itself, confining

---

[5]    SEC. 262. PERSONAL, LIVING, AND FAMILY EXPENSES.

(a) General Rule.--Except as otherwise expressly provided in this chapter [chapter 1, relating to normal taxes and surtaxes], no deduction shall be allowed for personal, living, or family expenses.

such deductions to "expenses * * * incurred * * * in carrying on any trade or business," but also follows from § 24(a)(1), expressly rendering nondeductible "in any case * * * [p]ersonal, living, or family expenses." See note 9, supra. In light of what has already been said with respect to the advent and thrust of § 23(a)(2), it is clear that the "[p]ersonal * * * or family expenses" restriction of § 24(a)(1) must impose the same limitation upon the reach of § 23(a)(2)--in other words that the only kind of expenses deductible under § 23(a)(2) are those that relate to a "business," that is, profit-seeking, purpose. The pivotal issue in this case then becomes: was this part of respondent's litigation costs a "business" rather than a "personal" or "family" expense?

---

[11] Surrey & Warren, Cases on Federal Income Taxation, 272 (1960).

We consider first the origin-and-character-of-the-claim test to determine whether the Payments stemmed from petitioner's personality as "a seeker after profit" or from petitioner's personality as "a creature satisfying * * * [her] needs as a human". United States v. Gilmore, 372 U.S. at 44. We then consider whether the Payments are ordinary and necessary expenses of her profit-seeking activity. Finally, we consider respondent's contention about apportionment.

A. Origin and Character of the Claim

In the instant case it may be helpful to begin by analyzing United States v. Gilmore, supra, and its companion case, United States v. Patrick, 372 U.S. 53 (1963).

In United States v. Gilmore, supra at 41, the taxpayer claimed a deduction for certain litigation expenses arising out of the taxpayer's and his wife's divorce suit. The taxpayer's

"overriding concern in the divorce litigation was to protect * * * [certain] assets against the claim of his wife." Ibid. The assets were controlling stock interests in certain corporations, the dividends and salaries from which amounted to substantially all of the taxpayer's income. Ibid. The taxpayer won a complete victory in his divorce case. Id. at 42. The Court of Claims allocated 80 percent of the taxpayer's legal expenses to the taxpayer's focus on protecting his assets and 20 percent to all other aspects of the divorce litigation, and allowed deductions for the 80 percent under sections 23(a)(2), I.R.C. 1939, and 212(2), ruling that deductions for the remaining 20 percent were barred by sections 24(a)(1), I.R.C. 1939, and 262. See id. at 40, 43. In United States v. Gilmore, 372 U.S. at 49, the Supreme Court described its conclusion as to the legal standard to be used in analyzing such situations:

> we resolve the conflict among the lower courts on the question before us * * * in favor of the view that the origin and character of the claim with respect to which an expense was incurred, rather than its potential consequences upon the fortunes of the taxpayer, is the controlling basic test of whether the expense was "business" or "personal" and hence whether it is deductible or not under § 23(a)(2). * * * [Emphasis added.]

Although in Gilmore the taxpayer's focus was (and, according to the Court of Claims, 80 percent of his expenditures were spent) on protecting the assets that clearly were the source of substantially all of his income, the Supreme Court directed its

analysis to what gave rise to the threat that the taxpayer sought to overcome.  That threat was the wife's claim.  The wife's claim, the Supreme Court determined, "stemmed entirely from the marital relationship, and not, under any tenable view of things, from income-producing activity."  Id. at 51.  Applying this to the search for "the origin and character of the claim with respect to which an expense was incurred," (id. at 49) the Supreme Court concluded as follows:  "Thus none of respondent's [Gilmore's] expenditures in resisting these claims can be deemed 'business' expenses, and they are therefore not deductible under § 23(a)(2)."  [Id. at 52.]

In a companion case, United States v. Patrick, 372 U.S. 53 (1963), the taxpayer's wife sued for divorce.  See id. at 54. Negotiations resulted in a property settlement agreement.  See ibid.  The divorce court then granted an absolute divorce to the wife, approved the property settlement, and ordered the taxpayer to pay the attorney's fees for both parties.  See ibid.  The taxpayer and his wife allocated the total fees as follows: $4,000 for handling the divorce itself, $16,000 for rearranging the stock interests in a family corporation that the taxpayer headed, and $4,000 for dealing with certain leases and transferring property to a trust.  See id. at 54-56.  The taxpayer claimed deductions for those portions of the attorney's fees allocable to the property settlement and not to the divorce

as such.  See <u>id.</u> at 56.  The Supreme Court pointed out that

<u>Patrick</u> is similar to <u>Gilmore</u>, summarizing its analysis (<u>ibid.</u>)

as follows:

> The principles held governing in that case are equally
> applicable here.  It is evident that the claims asserted by
> the wife in the divorce action arose from respondent's [the
> taxpayer's] marital relationship with her and were thus the
> product of respondent's personal or family life, not profit-
> seeking activity.  As we have held in <u>Gilmore</u>, payments made
> for the purpose of discharging such claims are not
> deductible as "business" [i.e., sec. 212(2)] expenses.

The Supreme Court in <u>Patrick</u> then commented as follows (<u>id.</u>
at 57):

> We find no significant distinction in the fact that the
> legal fees for which deduction is claimed were paid for
> arranging a transfer of stock interests, leasing real
> property, and creating a trust [in <u>Patrick</u>] rather than for
> conducting litigation [as in <u>Gilmore</u>].  These matters were
> incidental to litigation brought by respondent's wife, whose
> claims arising from respondent's personal and family life
> were the origin of the property arrangements.  * * *

We note that the Supreme Court in <u>Patrick</u> did not even

bother to discuss another difference between <u>Patrick</u> and

<u>Gilmore</u>--in <u>Gilmore</u>, the taxpayer won his divorce case and his

sought-for deductions were only for his expenses; in <u>Patrick</u>,

half of the taxpayer's sought-for deductions were for expenses of

his wife, which the taxpayer paid under compulsion of the local

court order.

In the instant case, petitioner's claimed deductions arose

from her payment of the relevant expenses of the other

beneficiaries, the Trustee, and the guardian ad litem.

Petitioner made the Payments because the California Court ordered her to make them. The California Court's order directing petitioner to make these Payments came in response to a petition for equitable allocation and a motion for sanctions filed separately by the other beneficiaries. That petition and that motion arose from petitioner's Objections to the Third Account. We do not continue to follow the steps all the way back to L.O. Ivey's will, establishing the Trust. See Boagni v. Commissioner, 59 T.C. 708, 713 (1973). Rather, we look for "'the kind of transaction out of which the obligation arose'". United States v. Gilmore, 372 U.S. at 48 (quoting Deputy v. du Pont, 308 U.S. 488, 494 (1940)).

After examining the record in the instant case we conclude, and we have found, that petitioner's obligation to make the Payments arose from the Trustee's filing of the Third Account. The context of the Third Account is distributions from the Trust. The distributions to petitioner arose from her status as an income beneficiary. Thus, after examining the origin and character of the claim in the instant case, we conclude that petitioner made the Payments in her personality of a "seeker after profit", United State v. Gilmore, 372 U.S. at 44, and petitioner's entitlement to deductions therefor is not barred by section 262(a).

Respondent contends as follows:

Under this test, petitioner's Objections to the Third Account do not constitute the relevant litigation for purposes of Section 212(1) and (2). The relevant litigation is that which was initiated by those persons who opposed petitioner's Objections to the Third Account and who prosecuted both a motion for monetary sanctions and a petition to charge petitioner's share of the trust's income with the payment of such monetary sanctions.

We disagree. The motion and petition were no more than responses to petitioner's Objections to the Third Account. The motion and petition would be pointless in the absence of petitioner's Objections and the Third Account. Indeed, even the California Court's decree, requiring petitioner's Payments to be made solely out of petitioner's current income from her income interest in the Trust, confirms that the California Court regarded the consideration and resolution of the motion and petition as being part of a dispute about petitioner's income from the Trust.

Respondent contends as follows:

In addition, those sanctions were imposed to compensate the victims of petitioner's bad faith and vindictive actions. Such sanctions bear no relation to the production or collection of income or to the management, conservation, or maintenance of income producing property.

We disagree.

In general, if the origin and character of the claim arise out of a taxpayer's personality as a seeker after profit rather than satisfier of human needs, it does not matter that the taxpayer's expenditures are made because of the imposition of a sanction to compensate the victims of the taxpayer's improper

actions.  See, e.g., <u>Ostrom v. Commissioner</u>, 77 T.C. 608 (1981), in which the taxpayer was allowed to deduct his payment of a jury award of damages imposed on account of the taxpayer's fraudulent misrepresentation on which the plaintiff had relied to his detriment.  To the same effect are the cases described in <u>Ostrom v. Commissioner</u>, 77 T.C. at 611-613.  In the instant case, the origin and character of the claim from which the liability arose are petitioner's personality as a seeker after profit.  This is not affected by whether petitioner won or lost the underlying litigation or even by whether the California Court imposed the obligation on petitioner because that Court concluded that petitioner had acted in bad faith and out of vindictiveness.

The rule is otherwise in certain statutorily defined areas (see, e.g., <u>Huff v. Commissioner</u>, 80 T.C. 804 (1983), dealing with sec. 162(f)) and in the "public policy doctrine."  See, e.g., <u>Commissioner v. Tellier</u>, 383 U.S. 687 (1966).  As to what remains of the public policy doctrine, see the opinions in <u>Stephens v. Commissioner</u>, 93 T.C. 108 (1989), revd. 905 F.2d 667 (2d Cir. 1990).  However, as noted <u>supra</u> note 2, respondent has conceded the public policy doctrine issue.  Also, clearly, section 162(f) does not apply.  Thus, we return to our conclusion that respondent's argument about the Payments constituting sanctions does not change our analysis or conclusions.

Respondent notes opinions of this Court and other courts indicating that "If the origin of the underlying suit is a personal vendetta against others, the related expenses are not deductible." Respondent contends that the California Court has, in effect determined that petitioner's filing of the Objections is "the result of her personal vendetta".

Respondent does not contend that the California Court's findings should be given collateral estoppel or other preclusive effect. See Rule 39 of the Tax Court Rules of Practice and Procedure. Petitioner does not contend that those findings should be excluded. See generally 5 Weinstein, Weinstein's Federal Evidence sec. 803.28 [2] (2d Ed. 1997); 1 Weinstein, sec. 201.12 [3]. Thus, we are presented with a record that includes the California Court's findings and testimony before this Court from petitioner and DiLeonardo. At trial, we explained our role vis-a-vis the California Court's ruling, as follows:

> THE COURT: Mrs. DiLeonardo, as I had said before, we took the recess. We're not here to re-try those proceedings. We're not here to second-guess the wisdom of what was done in those proceedings. We're here only to understand them to the extent necessary to decide whether or not these expense are deductible.

The California Court reached the conclusions it stated in the context of determining whether petitioner's actions in the proceeding before it justified punishment and, if so, then what was the nature and extent of the justified punishment. Our

context is different, as we noted in our discussion of <u>Ostrom v.</u> <u>Commissioner</u>, <u>supra</u>. The California Court imposed punishment and explained its determination. Its explanation and determination are not in substantive conflict with our conclusion that petitioner's actions arose out of her efforts to produce or collect income, or to manage, conserve, or maintain property held for the production of income. <u>Meredith v. Commissioner</u>, 47 T.C. 441 (1967), which respondent cites for the proposition that the expenses of a personal vendetta are not deductible, illustrates why we have concluded that the instant case had not yet progressed to the vendetta stage.

In <u>Meredith</u> the sequence was as follow:

1949--taxpayer sued John Deere Plow Co. for breech of an oral agency sales contract. Taxpayer's suit was dismissed. 89 F. Supp. 787 (SD Ia. 1950), affd. 185 F.2d 451 (8th Cir. 1950).

1952--taxpayer sued Deere to enforce an association agreement. Taxpayer's suit was dismissed by order; affd. 206 F.2d 196 (8th Cir. 1953).

--taxpayer sued Deere to enforce a contract. Taxpayer's suit was dismissed by order; affd. 244 F.2d 9 (<u>8 Cir</u>., 1957).

--Deere sued taxpayer for injunction to prevent more suits. Judgment for Deere, granting injunction; affd. 261 F.2d 121 (8th Cir. 1958).

1960--taxpayer sued Federal Judge involved in 1957 and 1958 affirmances noted <u>supra</u>. Order granting summary judgment to that Judge; affd. 286 F.2d 216 (8th Cir. 1960).

1960--taxpayer sued Deere and Deere's former counsel. Taxpayer held in contempt for violating injunction.

In <u>Meredith</u>, the taxpayer sought deductions for 1961 expenditures in connection with the 1960 suits.  We summarized the situation as follows (47 T.C. at 447):

>        While the petitioner's first action undoubtedly arose out of his business relationship with Deere, and the costs of that suit were ordinary and necessary expenses of his business, by the time he initiated the action against the judge and filed the last suit against Deere, in violation of the injunction, the original cause of action had ceased to have significance.  The controversy had become a personal struggle, a vendetta, and the expenses incurred had no proper relationship to the petitioner's business.

>        The action brought against Judge Van Oosterhout related to decisions of the Court of Appeals made in the petitioner's third suit against Deere and in Deere's suit for an injunction.  The business issue had been decided against petitioner long before these cases were initiated. There was no business relationship to the expenses of the action against the judge, which was a personal accusation completely without merit.

>        For the reasons stated, we sustain the respondent's determination.

In contrast, the instant case is only the second one in which petitioner has filed objections to the Trustee's accounting; petitioner proceeded only by way of the Objections and only after the Trustee initiated an action; and the Trustee's accounting directly affected petitioner's income from the Ivey Trust.  Our analysis and conclusions are not inconsistent with the determinations of the California Court.

B. <u>Ordinary and Necessary</u>

In <u>Trust of Bingham v. Commissioner</u>, 325 U.S. 365, 373-374 (1945), the Supreme Court described section 23(a)(2), I.R.C. 1939,[6] as follows:

> Section 23(a)(2) is comparable and <u>in pari materia</u> with § 23(a)(1), authorizing the deduction of business or trade expenses.  Such expenses need not relate directly to the production of income for the business.  It is enough that the expense, if "ordinary and necessary," is <u>directly connected with or proximately results from</u> the conduct of the business.  The effect of § 23(a)(2) was to provide for a class of nonbusiness deductions coextensive with the business deductions allowed by § 23(a)(1), except for the fact that, since they were not incurred in connection with a business, the section made it necessary that they be incurred for the production of income or in the management or conservation of property held for the production of income.  [Emphasis added; citations omitted.]

We have concluded <u>supra</u> that there is the necessary proximate relationship between the Payments and petitioner's efforts to produce or collect income or to manage, conserve, or maintain her income beneficiary interest.

We will not attempt to comprehensively summarize the meanings of "ordinary" and "necessary" in the contexts of sections 162(a) and 212.  See <u>Carbine v. Commissioner</u>, 83 T.C. 356, 362-364 (1984), affd. 777 F.2d 662 (11th Cir. 1985).  Suffice it to observe that generally a taxpayer's payment of a

---

[6]    The year before the Court in <u>Trust of Bingham v. Commissioner</u>, 325 U.S. 365 (1945), was 1940.  Sec. 23(a)(2), I.R.C. 1939, was enacted in 1942; it applied to <u>Trust of Bingham</u> because of the retroactive effective date of the 1942 enactment. This is briefly described in <u>Trust of Bingham v. Commissioner</u>, 2 T.C. 853, 857-858 (1943), the Tax Court's Court-reviewed opinion that was affirmed by the Supreme Court.

judgment which arose out of the taxpayer's trade or business is an ordinary and necessary expense of the trade or business. See Ostrom v. Commissioner, 77 T.C. 608 (1981). Section 212 is, in this regard, in pari materia with section 162(a). See Trust of Bingham v. Commissioner, 325 U.S. at 373. Petitioner's Payments of the judgment arose out of petitioner's profit-seeking section 212 activity. It was ordinary for a person in that situation to make the Payments, and it was necessary for petitioner to make the Payments.

We conclude that petitioner's Payments satisfy the "ordinary" and "necessary" requirements of section 212.

C. Allocation

Respondent contends that, even if a portion of petitioner's Payments satisfies the requirements of section 212(1) or (2)--

> Petitioner has presented no evidence which would enable the Court to allocate the total sanctions claimed between those amounts which purportedly qualify under Section 212(1) or (2) and those amounts which are strictly personal and therefore nondeductible under Section 262(a). Accordingly, petitioner is entitled to no deduction for the court-imposed sanctions at issue.

We recently summarized the law in this area as follows:

> We recognized that, when appropriate, litigation costs must be apportioned between business and personal claims, and that business litigation costs are nondeductible to the extent that they constitute capital expenditures. See, e.g. Kurkjian v. Commissioner, 65 T.C. 862 (1976) (deduction disallowed for portion of attorney's fees attributable to personal matters); Buddy Schoellkopf Prods., Inc. v. Commissioner, 65 T.C. 640, 646-647 (1975) (deduction disallowed for portion of attorney's fees attributable to acquisition of intangible assets); Merians v. Commissioner, 60 T.C. 187 (1973) (deduction disallowed for portion of attorney's fees attributable to personal matters); see also

Boagni v. Commissioner, supra [59 T.C. 708 (1973)] (recognizing that litigation costs can be characterized as both deductible and nondeductible when the litigation is rooted in situations giving rise to both types of expenditures). * * * [Guill v. Commissioner, 112 T.C. 325, 331 (1999).]

Respondent supports the apportionment contention by citing Pozzo di Borgo v. Commissioner, 23 T.C. 76 (1954); Looby v. Commissioner, T.C. Memo. 1996-207; Page v. Commissioner, T.C. Memo. 1970-112. The common thread of distinction between those cases on the one hand and the instant case on the other, is that in each of the cases cited by respondent the Court concluded or assumed arguendo that at least some part of the disputed expenses had been incurred for a nondeductible purpose, while in the instant case we conclude--and we have found--that the disputed expenses were incurred in entirety for section 212(1) or (2) purposes. Also, in Pozzo di Borgo, the taxpayer merely lost in her effort to claim at trial a deduction in excess of what she had claimed on her tax return. The taxpayer's tax return claim of a deduction for 63.4864 percent of the commission payments she made apparently was not challenged, and so the taxpayer "face[d] the burden of establishing that commissions in excess of the amount deducted on her income tax return are not within the

limiting provisions of section 24(a)(5)."[7]  <u>Pozzo di Borgo v.
Commissioner</u>, 23 T.C. at 78.  (Emphasis added.)  The taxpayer
failed to establish the factual underpinnings for her contention
that some or all of the remaining 36.5136 percent of her
commission payments were not allocable to income or interest
wholly exempt from tax, and so we held for the Commissioner.  <u>Id.</u>
at 78, 81.[8]

Thus, the cases that respondent cites to us do not provide
any instructions relevant to the instant case.  Respondent has
not suggested that the instant case involves any other
consideration, such as capital expenditures, or exempt income,
that might require apportionment, and our Findings of Fact
dispose of these theoretical possibilities.

---

[7]    Sec. 24(a)(5), I.R.C. 1939, is the predecessor of sec.
265(a)(1) of present law, relating to disallowance of deductions
for expenses allocable to income or interest wholly exempt from
income taxes.

[8]    We noted that the taxpayer's contention as to the commission
payments, if proven, would transform that case into an
overpayment--or refund--case.  See <u>Pozzo di Borgo v.
Commissioner</u>, 23 T.C. 76 (1954).  For a discussion of the
differences between a taxpayer's burden in a refund case and that
taxpayer's burden in a deficiency case, see <u>Helvering v. Taylor</u>,
293 U.S. 507, 514-516 (1935), affg. <u>Taylor v. Commissioner</u>, 70
F.2d 619, 620-621 (2d Cir. 1934).

We hold for petitioner.

To reflect the foregoing,[9]

Decision will be

entered for petitioner.

---

[9]     From the notice of deficiency and petitioner's 1993 income tax return, it is apparent that, as a result of our holding for petitioner on the disputed issue, she does not have a 1993 Federal income tax liability.  As a result, under paragraph (1) and the last sentence of sec. 6651(a), the addition to tax resulting from petitioner's conceded failure to timely file her 1993 tax return is zero.