16720

RHODE v. RAY WAITS MOTORS, INC. *ET AL.*
(74 S. E. (2d) 823)

*Messrs. Meyer, Goldberg & Hollings,* of Charleston, *for Appellant,*

162

*Messrs. Bailey & Buckley,* of Charleston, *for Respondent,*

February 24, 1953.

BAKER, Chief Justice.

The respondent brought this action against the appellant to recover actual and punitive damages for the alleged wrongful act of the appellant in taking from the respondent a Pontiac automobile which the latter claimed to have bought from the appellant. The appellant answered denying generally the allegations of the complaint that are material in this controversy.

The complaint alleges that the appellant is a corporation engaged in the business of selling automobiles in the City of Charleston and then proceeds as follows:

"*Second:* The plaintiff is the owner and is entitled to the immediate possession of one light green 1951 Pontiac Four Door Sedan Deluxe, Motor No. MW8UH18467, Serial No. being the same as the Motor No., together with all accessories, including a radio and heater, which automobile is wrongfully, maliciously, willfully and unlawfully detained by the defendant, Ray Waits Motors, Inc.

"*Third:* The plaintiff has demanded of the defendant that it deliver possession of her said automobile to her, and the said defendant has intentionally, wrongfully, maliciously, willfully and unlawfully detained and still does intentionally, wrongfully, maliciously, willfully and unlawfully detain the same, and has refused and still refuses to deliver the same to the plaintiff, and has deprived the plaintiff and still deprives the plaintiff of the use thereof.

"*Fourth:* The value of the plaintiff's automobile is two thousand, six hundred twenty and 11/100 ($2,620.11) Dollars."

The prayer of the Complaint is as follows:

"*Wherefore,* plaintiff prays judgment against the defendant, Ray Waits Motors, Inc., for the possession of her said automobile or, if possession thereof cannot be had, then for the value thereof, to wit, the sum of two thousand, six hundred twenty and 11/100 ($2,620.11) Dollars, and for damages, actual and punitive, for the unlawful detaining of and damages and injury to the said automobile by the defendant, Ray Waits Motors, Inc., and for depriving the plaintiff of the use thereof, in the sum of fifty thousand ($50,000.00) Dollars, together with the costs of this action, and for such other and further relief as to the Court may seem proper in the premises."

The case proceeded to trial on these pleadings, before the Circuit Court and a jury, and resulted in a verdict in favor of the respondent as follows:

"We find for the plaintiff actual damages in the amount of Two Thousand six hundred and twenty dollars and eleven cents."

Upon the conclusion of the plaintiff's case, the appellant moved for a nonsuit, which was refused, and upon the conclusion of the testimony the appellant moved for a direction of verdict. This was refused. Upon the coming in of the verdict, the appellant made a motion for judgment *non obstante veredicto.* This motion likewise was refused.

After the trial of the case had been entered upon there arose a debate between counsel for the respective litigants as to the nature of the action. On behalf of the respondent it is contended that the action is one for conversion. Counsel for the appellant contend that the action is one in claim and delivery. The trial Judge ruled with the respondent on this issue.

In any event, the pleadings of the respondent do not include the affidavit required by Section 10-2503 of the Code of 1952, or the requisition required by Section 10-2504, or the bond required by Section 10-2505, if she desired to require immediate delivery.

As above shown, the verdict of the jury does not accord with the requirements of a verdict in claim and delivery cases, whereas it does conform to the requirements of a verdict in an action for conversion. See *Wilkins v. Willimon,* 128 S. C. 509, 122 S. E. 503. Counsel made no comment on the form of the verdict when it was published.

We find it unnecessary to deal at length with this phase of the controversy because counsel on both sides tried the case as one for conversion, and the trial Judge charged the jury in the same light rather than as an action in claim and delivery.

Regardless of the foregoing, it is immaterial in this case what the characterization of the action may be. To the extent that it purports to be an action to recover the possession of the car, it partakes of the nature of an action in claim and delivery; in so far as the action may be deemed one solely for damages for conversion, it resembles an action for conversion. *Reynolds v. Philips,* 72 S. C. 32, 51 S. E. 523. Punitive damages are appropriate in either form of action. And, of course, there is no reason why the two actions could not be combined in the same suit, either jumbled in a single cause of action, or presented in separate causes of action. *Ibid.*

In the above light, we proceed to a consideration of the question whether, under the facts of this case, the respondent made out a cause of action for the recovery of damages for the unlawful taking of the automobile from the respondent.

Prior to September 7, 1951, the respondent was the owner of a Chevrolet car. She had in mind the purchase of a new car and was giving consideration to either a new Chevrolet or a Pontiac. With this in mind she contacted one George Fata who operated a filling station and also dealt in used cars. The place of business of Fata was very close to the place where the respondent worked and the respondent became acquainted with Fata through the purchase of gasoline and oil from the latter, and from having her car serviced there. She had known him only a few months.

Fata offered to procure for the respondent a new Pontiac car of the model and color which she desired and to take the Chevrolet car in trade. He gave the respondent the figure of $1,600.00 as the amount that he would allow for the Chevrolet and told her that he would buy the Pontiac for her at a price substantially below the normal selling price of the car. The usual selling price was in excess of $2,600.00. He indicated to respondent that he would procure the Pontiac car for her for about $2,400.00, crediting this purchase price with the $1,600.00 which he agreed to allow for the Chevrolet.

At the time these discussions were going on Fata did not have in mind any particular place where he would obtain the Pontiac.

Upon the inducements above stated, the respondent delivered her Chevrolet car to Fata. This was on or before September 6, 1951. Fata, on September 7th, sold the Chevrolet for $1,310.00 and appropriated the money to his own use.

On September 10th, Fata learned that the appellant had some Pontiac cars available for sale. Appellant was agent for

the Pontiac car. After making some inquiries as to the price of the cars and whether, as a used car dealer, he could get a discount, Fata communicated with the respondent and suggested that she go to the appellant's place of business to inspect the vehicles. This she did, being accompanied by one of Fata's employees.

In the course of the trip of respondent to the appellant's place of business Fata's employee indicated to her that she was not to be surprised if she was referred to, in any discussions with the appellant's staff, as Mrs. Fata. It was explained to her that Fata would be able to get a better price on the Pontiac if it was understood that the purchase was being made for Fata's wife.

It is the custom of the trade, relating to the sale of new automobiles, that the dealer will not ordinarily sell a new vehicle to a used car dealer, or indeed to any one else for resale. Fata knew this. He therefore contrived the scheme of representing to the appellant that the respondent was his wife, and that the purchase of the Pontiac was being made for her. This scheme was explained by him to his employee who in effect communicated it to the respondent when they were going to appellant's place of business to inspect the cars.

The respondent found at appellant's place of business a Pontiac car of the kind she desired and she so reported to Fata. During the conversation with appellant's salesmen, she was addressed as Mrs. Fata on at least two occasions. She denied making any specific representation on her own part, but did not deny that appellant's representatives were led to believe that she was Mrs. Fata, and that she was so referred to and addressed.

On September 11th, Fata undertook to close with appellant the transaction for the purchase of the Pontiac but had the car delivered to him after banking hours and gave appellant a check for the full amount of the purchase price. The inquiries made by appellant's representative on the follow-

ing morning at the bank on which the check was drawn as to whether the check was good brought a negative reply, and appellant's representative then demanded of Fata that either he be paid the amount of the purchase price or that the car be surrendered to him. The car had already been delivered to the respondent.

By a subterfuge Fata succeeded in getting possession of the automobile from respondent on September 12th, and delivered the same to appellant's representative with the understanding that Fata would get the money together and complete the deal the following day.

He failed to provide the money the following day, whereupon the appellant got back from Fata the documents involved in the transaction. It repudiated the sale and in due course disposed of the vehicle.

At this stage of the matter Fata had the proceeds of sale of the Chevrolet. He also had 800.00 additional to apply on the transaction. This $800.00 had been obtained by him from a finance company to whom he had assigned a conditional sales contract covering the automobile in issue which he had obtained from the respondent prior to Fata's obtaining the automobile from the appellant.

Another element in the situation is that when appellant repudiated the sale because of its inability to collect the check given by Fata for the purchase price, it advised Fata that it would hold the car for a short period to enable Fata to raise the money. On this basis Fata paid to the appellant $100.00 and made two additional payments aggregating $1,-100.00. These funds, however, were not credited by the appellant on the purchase price but were taken by it and held in escrow pending the payment of the full amount of Fata's returned check.

No further funds having been paid by Fata, the appellant, with Fata's approval, and at a much later date, paid over the $1,200.00 to the finance concern through which Fata had obtained the $800.00 on respondent's conditional sales con-

tract. This concern had other claims against Fata and the $1,200.00 was by agreement between it and Fata distributed among the several items of Fata's indebtedness, however, paying in full the $800.00 for which Fata had taken respondent's conditional sales contract.

First it may be observed that the transaction whereby the respondent transferred her Chevrolet automobile to Fata, and the latter disposed of the same and pocketed the proceeds, is not involved in the disposition of the present case. As already related, the Chevrolet was delivered to Fata on September 6th and was sold by him on September 7th. There is no stage of the various transactions in question at which the appellant had any dealings with the Chevrolet.

The controlling consideration in this case is that when the taking of the testimony was concluded, the testimony was susceptible of no other reasonable inference than that Fata acted as agent for the respondent in the purchase of the Pontiac, and that by reason of such agency, the respondent must unfortunately take the loss which Fata fraudulently brought about. Fata himself testified as a witness for the respondent (though at the time he was serving a penitentiary sentence for the fraud perpetrated by him in connection with the matters involved in the present case and in other cases) that all that he was expecting out of the transaction relating to the Pontiac was a commission for getting the car for her.

The testimony of the respondent on this subject is not in the slightest degree inconsistent with Fata's testimony. She knew that Fata held no franchise for the sale of new cars and was strictly a used car dealer, except that occasionally he may have procured a new car of one kind or another for resale. He had no show room, no garage facilities, and no salesmen. At the time of the transaction now in question he apparently had no cars, either new or used, on his premises. In the main, he was a filling station operator, and such transactions as he made in relation to the sale of automobiles were made on his filling station premises.

The agency relationship of the respondent and Fata of course put upon the respondent the responsibility for and the consequences of the frauds that he perpetrated. While this is not always true in the relationship of principal and agent, the active participation of the respondent in Fata's scheme to obtain a Pontiac car from the appellant under circumstances in which the appellant would not have entered into the transaction had it known the true facts, put her in the unfortunate position of a participant in the fraudulent basis of the transaction upon which she relies to make out a case against the appellant.

We must take judicial notice of the fact that as a general rule, the practice in the automobile trade (as far as the sale of new cars is concerned) to refuse to make a sale to enable some one else to make a resale is a practice very generally followed, and the testimony of appellant's witnesses relating thereto cannot be deemed irrelevant or otherwise lacking in legal weight. This practice is one founded upon sound business and promotional policies, to assure that the purchasers of new cars will receive the benefit of the warranties and service perquisites to which a purchaser of a new car is entitled, and as the result of which the reputation of a particular line of cars may be hurt or helped. Only when a car is purchased from a dealer holding the manufacturer's franchise can the warranties and service perquisites provided by the manufacturer and the dealer be applicable.

There is no testimony from which it can be reasonably inferred that the appellant had the slightest information of the fraud that was being practiced upon it, or that it at any time intended to or did part with title to the Pontiac except upon the express condition, unfulfilled, that payment in full of the retail selling price be made to it. The result of all of the voluminous testimony merely is that Fata concocted a fraudulent scheme involving misrepresentations of fact made to the appellant, and the giving of a check for the purchase price of the Pontiac without having funds on deposit to pay the

same, which acts were acts of Fata and not of the respondent, but Fata being respondent's agent she is in the regrettable position of having to take the consequences of her agent's acts.

The application of the above stated principle of the law of principal and agent exculpates the appellant from any liability or responsibility to the respondent.

The case is a typical one for the application of the maxim that where one of two innocent persons must suffer from the consequences of a fraud perpetrated by a third party, the one whose acts or omissions made the fraud possible must suffer the loss arising out of the transaction.

The respondent seeks to escape the application of the aforestated rules by charging the appellant with negligence and with a resulting estoppel. We have not set forth above all of the factual detail contained in the testimony but we have read the same with care, and do not find in the record any foundation to support this contention. The loss which the respondent has suffered is not due to any act or omission on the part of the appellant, in the light of the circumstances prevailing at the time it accepted Fata's check, and delivered the Pontiac to him. Conceivably, the appellant might have used greater precaution in dealing with Fata, but even so, it had the right to believe from the surrounding circumstances that Fata was acting in good faith to purchase the car for his wife and not for resale, and that the check given it by Fata would be paid upon presentation. The respondent herself, posing as Mrs. Fata, was a party to inducing the appellant to take reasonable risks in accepting the representations of Fata and extending to him a degree of confidence that was not unreasonable in a situation in which it was understood that Fata, supposedly a reputable business man, was making the purchase for his wife.

The contentions of appellant above set forth were in effect presented to the trial Judge first in the appellant's motion

for a direction of verdict, and again in the appellant's motion for judgment *non obstante veredicto*. Presumably the same is true of appellant's motion for a nonsuit, though the record does not set forth the grounds upon which such motion was made. The first mentioned of these motions should have been granted. This not having been done, the appellant's motion for judgment *non obstante veredicto* should have been granted.

We regret that the rulings herein made subject the respondent to a serious financial loss, but this loss was due to the misplaced confidence of respondent in Fata.

The judgment is reversed and the case remanded to the Circuit Court for the entry of judgment in favor of the appellant under Rule 27.

FISHBURNE, STUKES, TAYLOR and OXNER, JJ., concur.