112 T.C. No. 22


UNITED STATES TAX COURT


GEORGE W. GUILL, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 16796-97.               Filed June 18, 1999.


        P, an independent contractor, commenced a lawsuit
against D, alleging that D was liable to P for breach
of contract and conversion arising out of P's work for
D.  As to the conversion claim, the jury awarded P
actual and punitive damages, together with interest and
costs.  P received the award in 1992, and, from this
amount, P paid his attorneys their fees and the court
costs (collectively, legal costs).  P deducted the
legal costs on his 1992 Schedule C, Profit or Loss From
Business, reporting that the costs arose out of his
sole-proprietor business, and he reported the actual
damages on that schedule as income from the business.
P did not include the punitive damages in his 1992
gross income.  R determined that the legal costs were
deductible as a nonbusiness itemized deduction on
Schedule A, Itemized Deductions, and that the punitive
damages were reportable as nonbusiness income.  R
concedes that the legal costs are a business expense to
the extent they are attributable to P's recovery of the

actual damages. R asserts that the remaining legal costs are a nonbusiness itemized deduction because they are attributable to P's recovery of the punitive damages. P and R agree that the punitive damages are includable in P's business income if the legal costs are a business expense.

Held: All of the legal costs are attributable to P's trade or business; hence, the legal costs are all deductible on Schedule C as a business expense.

Bobby Wayne Enlow, for petitioner.

Jeanne Gramling, for respondent.

OPINION

LARO, Judge: This case is before the Court fully stipulated. See Rule 122. George W. Guill petitioned the Court to redetermine deficiencies of $100,916 and $434 in his 1992 and 1993 Federal income tax, respectively. Following the parties' concessions, the primary issue left to decide is whether all of the attorney's fees and court costs (collectively, legal costs) paid by petitioner in the successful prosecution of his claim of conversion are expenses of his sole-proprietor business; petitioner was awarded actual damages, punitive damages, costs, and interest. We hold they are. Section references are to the Internal Revenue Code in effect for 1992. Rule references are to the Tax Court Rules of Practice and Procedure. Dollar amounts are rounded to the nearest dollar.

Background

All facts have been stipulated and are so found. The stipulation of facts and exhibits submitted therewith are incorporated herein by this reference. Petitioner resided in Columbia, South Carolina, when he petitioned the Court.

Petitioner began working as an agent for Academy Life Insurance Co. (Academy) in the late 1970's. He worked for it as an independent contractor under a contract between the two. Academy fired him in July 1986. When it did, it was contractually obligated to pay him renewal commissions on policies that he or an agent under his supervision had sold. After his firing, Academy remitted to him reduced monthly commissions. It also stopped sending to him the paperwork documenting his commissions.

In September 1987, petitioner sued Academy for breach of contract and conversion, praying in his complaint for an award of actual and punitive damages. Petitioner alleged that Academy was liable to him for: (1) An unlawful termination of contracts with resulting failure to pay money due thereunder (breach of contract and conversion), (2) unfair trade practices (also seeking treble damages and attorney's fees), (3) a termination of resident counselor status, (4) a failure to pay commissions, and (5) the fraudulent filing of Federal tax forms reporting income not paid to him. Following a jury trial, the U. S. District Court hearing the case directed a verdict against Academy for breach of contract and sent the issues of conversion and resulting damages

to the jury.  The judge instructed the jury as follows with respect to punitive damages:

> The plaintiffs [petitioner and the male taxpayer in Whitley v. Commissioner, T.C. Memo. 1999-124] are also seeking punitive damages in their conversion cause of action.
>
> The law permits the jury, under certain circumstances, to award punitive damages in order to punish a wrong-doer for some extraordinary misconduct, and to serve as a warning not to engage in such conduct in the future.
>
> Thus, if you find that the plaintiffs have shown by a preponderance of the evidence, that the defendant converted the plaintiffs' money with malice, ill will, a conscious indifference to the rights of others, or a reckless disregard for the rights of others, you may award the plaintiffs punitive damages.
>
> If you so find, it becomes your right to award punitive damages in such an amount as you unanimously agree to be proper in light of the character of the wrong committed, the punishment which should be applied, and the ability of the defendant to pay.

The jury found against Academy on the conversion claim and awarded petitioner $51,499 in actual damages for unpaid commissions and $250,000 in punitive damages, together with "interest thereon at the rate of 8.85 per cent and his costs of action".  The jury's verdict was affirmed upon appeal.

Academy paid $371,542 to petitioner in 1992, and, from that amount, he paid his attorneys the legal costs, which consisted of $148,617 in attorney's fees and $3,279 in court costs. Petitioner included the actual damages in income on his Schedule C, Profit or Loss From Business, and he claimed on that schedule a deduction for the legal costs.  Petitioner did not report any of the punitive damages on his 1992 Federal income tax return.

Respondent issued petitioner a notice of deficiency that reflects respondent's determination that the $250,000 in punitive damages is includable in petitioner's 1992 gross income as "Other Income" and that he must deduct the legal costs on Schedule A, Itemized Deductions, as a miscellaneous deduction. Respondent's determination as to the punitive damages and the legal costs resulted in certain other "mechanical" adjustments, one of which was the applicability of the alternative minimum tax.

## Discussion

In a case of first impression, we must decide whether the litigation costs attributable to an independent contractor's recovery of punitive damages are deductible on Schedule C as a business expense or on Schedule A as a nonbusiness itemized deduction.[1] Petitioner also contests respondent's determination that petitioner did not receive the punitive damages on account of a personal injury. We recently held that the punitive damages received by Mr. Whitley, petitioner's coplaintiff in the Academy lawsuit, were includable in Mr. Whitley's gross income. See Whitley v. Commissioner, T.C. Memo. 1999-124. We relied mainly on O'Gilvie v. United States, 519 U.S. 79 (1996), Commissioner v. Schleier, 515 U.S. 323 (1995), and United States v. Burke, 504 U.S. 229 (1992), concluding that punitive damages received under South Carolina law are not excludable from gross income

---

[1] Respondent concedes that the litigation costs attributable to the actual damages are deductible on Schedule C as a business expense.

under section 104(a)(2).  We apply the reasoning in Whitley and hold the same here.

As to the primary issue, section 162(a) governs the deductibility of litigation costs as a business expense. Section 162(a) allows an individual to deduct all of the ordinary and necessary expenses of carrying on his or her trade or business.  Section 212 governs the deductibility of litigation costs as an itemized deduction, when the costs are incurred as a nonbusiness profit-seeking expense.  Section 212 allows an individual to deduct all of the ordinary and necessary expenses paid or incurred in:  (1) Producing income, (2) managing, conserving, or maintaining property held for the production of income, or (3) determining, collecting, or refunding a tax. Sections 162(a) and 212 are considered in pari materia, except for the fact that the income-producing activity of the former section is a trade or business whereas the income-producing activity of the latter section is a pursuit of investing or other profitmaking that lacks the regularity and continuity of a business.  See Woodward v. Commissioner, 397 U.S. 572, 575 n.3 (1970); United States v. Gilmore, 372 U.S. 39, 44-45 (1963); Bingham's Trust v. Commissioner, 325 U.S. 365, 374-375 (1945).

A deduction of litigation costs under section 162(a) may be more desirable to an individual than is a deduction under section 212.  The primary advantage to a deduction under section 162(a), vis-a-vis a deduction under section 212, rests on each deduction's effect on gross income and adjusted gross income.

A deduction under section 162(a) is subtracted in full from gross income to arrive at adjusted gross income. A deduction under section 212 is subtracted from adjusted gross income to arrive at taxable income and is subject to certain floor limitations in section 67(a). The benefit from a deduction of litigation costs under section 212 may also be limited by application of the alternative minimum tax. See sec. 56(b); see also Benci-Woodward v. Commissioner, T.C. Memo. 1998-395.

Whether an ordinary and necessary litigation expense is deductible under section 162(a) or section 212 depends on the origin and character of the claim for which the expense was incurred and whether the claim bears a sufficient nexus to the taxpayer's business. See Woodward v. Commissioner, supra; United States v. Gilmore, supra at 44-45; see also Peckham v. Commissioner, 327 F.2d 855, 856 (4th Cir. 1964), affg. 40 T.C. 315 (1963). Ordinary and necessary litigation costs are generally deductible under section 162(a) when the matter giving rise to the costs arises from, or is proximately related to, a business activity. See Woodward v. Commissioner, supra; Kornhauser v. United States, 276 U.S. 145, 153 (1928). Litigation costs must be "attributable to a trade or business carried on by the taxpayer" in order to be deductible as a business expense. Sec. 62(a)(1).

The ascertainment of a claim's origin and character is a factual determination that must be made on the basis of the facts

and circumstances of the litigation.  See <u>United States v. Gilmore</u>, <u>supra</u> at 47-49.  The most important factor to consider is the circumstances out of which the litigation arose.  See <u>Boagni v. Commissioner</u>, 59 T.C. 708 (1973).  In passing on this factor, the fact finder must take into account, among other things, the allegations set forth in the complaint, the issues which arise from the pleadings, the litigation's background, nature, and purpose, and the facts surrounding the controversy. See <u>id.</u> at 713.

Petitioner's legal costs, which the parties agree are "ordinary" and "necessary" expenses, bear the required nexus to his sole-proprietor insurance business to meet the requirements for deductibility under section 162(a).  As a matter of fact, petitioner's lawsuit against Academy arose entirely from his insurance business.  Each cause of action petitioner alleged in the lawsuit was spawned entirely from the fact that, after Academy fired him, it failed to honor the terms of their working agreement by not paying him the commissions to which he was entitled under their agreement.  But for the agreement, and the fact that Academy breached the agreement by unilaterally terminating its obligation to pay commissions to petitioner, the instant lawsuit, as it was framed, would never have arisen, and petitioner would never have incurred (or paid) any of the legal costs.

Respondent devotes much time in his opening brief to his proffered method of apportioning petitioner's legal costs between his business and nonbusiness activities, spending little time arguing that apportionment of the legal costs is appropriate. As we understand respondent's argument on apportionment, petitioner must apportion his legal costs because, respondent asserts, petitioner has not proven that he incurred 100 percent of the costs in his insurance business. We disagree. After reviewing the record, which includes 19 stipulations and 9 exhibits, we are persuaded by more than a preponderance of the evidence that all of petitioner's legal costs were attributable to his insurance business and, more importantly, that all of the costs were connected to claims which arose in that business. Petitioner's complaint, for example, attests to the fact that each of his claims, and not simply his claim of conversion, arose from the sole-proprietor insurance business.

We consider it both ordinary and necessary from a business standpoint for petitioner to have filed the lawsuit against Academy and for him to have sought any and all damages to which he was entitled on account of Academy's breach of contract and related conversion. The mere fact that petitioner sought and was paid punitive damages to punish Academy for its "extraordinary misconduct, and to serve as a warning [to it and to other persons] not to engage in such conduct in the future" does not

change the fact that petitioner's legal costs were all attributable to his business activity.  Pursuant to South Carolina law, see Oxford Fin. Cos. v. Burgess, 402 S.E.2d 480, 482 (S.C. 1991); Rhode v. Ray Waits Motors, Inc., 74 S.E.2d 823, 825 (S.C. 1953); see also Sherrill White Constr., Inc. v. South Carolina Natl. Bank, 713 F.2d 1047, 1051-1052 (4th Cir. 1983), and the judge's instructions, the jury in the Academy lawsuit awarded petitioner both actual and punitive damages on his conversion claim.[2]  The fact that petitioner received two different types of damages on his single claim of conversion does not mean, as respondent would have us hold, that the claim is bifurcated into two claims solely for purposes of applying the Federal income tax laws.  Contrary to respondent's position in this case, the various types of damages which petitioner received on his conversion claim do not dictate whether his legal costs must be apportioned between his business and nonbusiness

---

[2] We recognize that South Carolina law does not provide that punitive damages are awarded in every case in which a tortfeasor is held liable for an act of conversion.  See Sherrill White Constr., Inc. v. South Carolina Natl. Bank, 713 F.2d 1047, 1051-1052 (4th Cir. 1983) ("in order to recover punitive damages [under South Carolina law] there must be more than mere conversion.  There must be malice, ill will, a conscious indifference to the rights of others, or a reckless disregard thereof."; citations and quotation marks omitted).  The fact that the converter's degree of culpability enters into an award of punitive damages under South Carolina law, however, does not change the fact that the origin and character of a claim for punitive damage under that law is an act of conversion, which, in this case, stems from petitioner's business activity.

activities. An allocation of litigation costs, if and when applicable, rests on the origin of the claims relating to those expenses. See Woodward v. Commissioner, 397 U.S. at 577-578; United States v. Gilmore, 372 U.S. at 44-45; see also Peckham v. Commissioner, 327 F.2d at 856.

We recognize that, when appropriate, litigation costs must be apportioned between business and personal claims, and that business litigation costs are nondeductible to the extent that they constitute capital expenditures. See, e.g., Kurkjian v. Commissioner, 65 T.C. 862 (1976) (deduction disallowed for portion of attorney's fees attributable to personal matters); Buddy Schoellkopf Prods., Inc. v. Commissioner, 65 T.C. 640, 646-647 (1975) (deduction disallowed for portion of attorney fees attributable to acquisition of intangible assets); Merians v. Commissioner, 60 T.C. 187 (1973) (deduction disallowed for portion of attorney's fees attributable to personal matters); see also Boagni v. Commissioner, supra, (recognizing that litigation costs can be characterized as both deductible and nondeductible when the litigation is rooted in situations giving rise to both types of expenditures). This principle of allocation is inapposite to our decision herein for two main reasons. First, petitioner's legal costs were all attributable to claims which originated in his business activity, the primary claim being that of conversion. Second, in contrast to cases where each of the underlying claims could have resulted in an award of damages

regardless of an award of damages on any other claim, petitioner's award of punitive damages could not have been made in isolation.  As South Carolina's highest court has stated: "Punitive damages may be awarded [under South Carolina law] only upon a finding of actual damages."  Dowling v. Home Buyers Warranty Corp., 428 S.E.2d 709, 711 (S.C. 1993); see also Gamble v. Stevenson, 406 S.E.2d 350 (S.C. 1991).

We hold that petitioner may deduct the legal costs under section 162(a).[3]  In reaching our holdings herein, we have considered all arguments by the parties, and, to the extent not addressed above, find them to be meritless or irrelevant.  To reflect the foregoing,

Decision will be entered

under Rule 155.

---

[3] The parties agree that our holding on this issue means that the punitive damage award is includable in petitioner's self-employment income and that it is subject to self-employment tax.  See secs. 1401 and 1402.