T.C. Summary Opinion 2007-65

UNITED STATES TAX COURT

JOHN C. AND JOAN F. STUKES, Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 16648-05S.                Filed April 26, 2007.

John C. Stukes, pro se.

David B. Mora, for respondent.

JACOBS, Judge:  This case was heard pursuant to the
provisions of section 7463 of the Internal Revenue Code in effect
at the time the petition was filed.  Pursuant to section 7463(b),
the decision to be entered is not reviewable by any other court,
and this opinion shall not be treated as precedent for any other
case.  Unless otherwise indicated, subsequent section references
are to the Internal Revenue Code in effect for the year in issue,

and Rule references are to the Tax Court Rules of Practice and Procedure.

Respondent determined a $7,908 deficiency in petitioners' 2002 Federal income tax. The issues for decision are: (1) The amount of petitioners' loss from farming; and (2) the amount of the excess unreimbursed employee and other miscellaneous expenses deduction[1] to which petitioners are entitled.

<u>Background</u>

Some of the facts have been stipulated and are so found. The stipulation of facts and the attached exhibits are incorporated herein by this reference. At the time they filed the petition, petitioners resided in Katy, Texas.

Petitioners timely filed a joint Form 1040, U.S. Individual Income Tax Return, for 2002 in which they claimed: (1) A loss from farming, and (2) itemized deductions for excess unreimbursed employee and other miscellaneous expenses. Respondent determined that a portion of the amount claimed as a farm loss and the entire amount claimed as itemized deductions for excess unreimbursed employee and other miscellaneous expenses were not

---

[1]The excess unreimbursed employee and other miscellaneous expenses deduction is claimed on Schedule A, Itemized Deductions. The amount of the deduction equals the sum of: (1) Unreimbursed employee expenses--job travel, union dues, job education, etc.; (2) tax preparation fees; and (3) other expenses--investment, safe deposit box, etc., less an amount equal to 2 percent (the 2-percent floor) of the taxpayer's adjusted gross income. See sec. 67(a).

allowable.  On the basis of those determinations, respondent calculated a deficiency in tax of $7,908 and on July 5, 2005, sent petitioners a notice of deficiency.  Petitioners timely petitioned this Court for a redetermination of the disallowed amounts.

## Discussion

As a general rule, the Commissioner's determinations in the notice of deficiency are presumed correct, and the burden of proving an error is on the taxpayer.  Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933).  However, pursuant to section 7491(a), the burden of proof with respect to any factual issue relating to ascertaining the liability for tax shifts to the Commissioner if the taxpayer:  (1) Maintained adequate records; (2) satisfied the substantiation requirements; (3) cooperated with the Commissioner's agents; and (4) during the Court proceeding introduced credible evidence with respect to the factual issue involved.  Except for the substantiation requirements for some items, discussed infra, we find that petitioners satisfied these requirements.

Issue 1. Loss From Farming

During 2002, petitioners owned a 45-acre farm in Williamson County, Texas.  In calculating their 2002 gross income, petitioners included a loss of $20,116, which was supported by Schedule F, Profit or Loss From Farming.  The Schedule F does not

report any farm income; the entire reported loss was due to claimed expenses. The expenses petitioners reported on Schedule F were: Car and truck expenses ($3,227), chemicals ($850), custom hire ($9,500), depreciation ($3,449), fertilizers ($550), gasoline ($350), insurance ($1,200), repairs and maintenance ($425), supplies purchased ($150), taxes ($250), and tractor repairs ($165).

In the notice of deficiency, respondent determined that petitioners did not substantiate any of the items reported on Schedule F and therefore none were allowable. At trial, respondent conceded petitioners' entitlement to deduct $8,186 for custom hire, $1,850 for depreciation, $126.48 for taxes, and $350 for gasoline, and petitioners conceded that $1,850 of claimed depreciation expense was not allowable.

A taxpayer who is carrying on a trade or business generally may deduct ordinary and necessary expenses paid or incurred in connection with the operation of the business. Sec. 162(a); see also Commissioner v. Lincoln Sav. & Loan Association, 403 U.S. 345, 352 (1971); FMR Corp. & Subs. v. Commissioner, 110 T.C. 402, 414 (1998). Respondent does not dispute that petitioners' farming activity qualifies as a trade or business and that the expenses from this activity, if incurred, were ordinary and necessary. Thus, we need address only whether the claimed

expenses were incurred, and if so, through substantiation, the amounts paid and hence allowable as deductions.

When a taxpayer establishes that he/she has incurred deductible expenses but is unable to establish the exact amounts, we can estimate the deductible amounts, but only if the taxpayer presents sufficient evidence to establish a rational basis for making the estimates.  See Cohan v. Commissioner, 39 F.2d 540, 543-544 (2d Cir. 1930); Vanicek v. Commissioner, 85 T.C. 731, 742-743 (1985).  In estimating the amount allowable, we bear heavily on the taxpayer whose inexactitude in substantiating the amount of the expense is of his own making.  See Cohan v. Commissioner, supra at 544.  However, without a rational basis for making the estimate, any allowance we make would amount to unguided largesse.  Williams v. United States, 245 F.2d 559, 560-561 (5th Cir. 1957).

In the case of expenses paid or incurred with respect to certain listed property, section 274 overrides the Cohan doctrine, and those expenses are deductible only if the taxpayer meets the stringent substantiation requirements of section 274(d).  Sanford v. Commissioner, 50 T.C. 823, 827-828 (1968), affd. per curiam 412 F.2d 201 (2d Cir. 1969).

Section 274 contemplates that no deduction may be allowed for specified expenses on the basis of any approximation or the unsupported testimony of the taxpayer.  Sec. 1.274-5T(a),

Temporary Income Tax Regs., 50 Fed. Reg. 46014 (Nov. 6, 1985). At a minimum, the taxpayer must substantiate: (1) The amount of the expense; (2) the time and place the expense was incurred; and (3) the business purpose for which the expense was incurred.

The strict substantiation requirements of section 274 apply to deductions with respect to "any listed property (as defined in section 280F(d)(4))". Section 280F(d)(4)(A)(i), in turn, includes "passenger automobile" in the definition of listed property. Further, section 1.274-5T(b)(6)(i)(A), Temporary Income Tax Regs., 50 Fed. Reg. 46016 (Nov. 6, 1985), includes the cost of maintenance and repairs for listed property as subject to the section 274 substantiation rules.

Petitioners claimed automobile expenses of $3,227; these expenses related to petitioners' pickup truck. Mr. Stukes testified that some substantiating documents pertaining to the automobile mileage were lost when petitioners moved. However, he introduced a truck mileage log (the mileage log) with 24 entries. The mileage log, which shows that petitioners drove the truck 6,684 miles for farm-related business, was not prepared contemporaneously with the incurrence of the claimed expenses but rather was a reconstruction by petitioners of their use of the truck. The mileage log shows the date of each use and the specific destination (such as Home Depot, Wal-Mart, farm equipment vendors, gas stations, and truck supplies vendors).

The mileage log is supplemented by bank records which show purchases from the retail establishments or vendors on specific dates. The date claimed for the business use of the truck in the mileage log does not correspond in every instance to the date of the related purchase shown on the bank records. Further, neither the mileage log nor the bank records show the specific merchandise purchased from each seller, and it is possible that petitioners purchased items for their personal consumption as well as for their farm when they made these excursions using the truck. It is equally possible that petitioners made additional trips to acquire farm equipment or supplies but did not actually make a purchase, so that there might have been additional mileage costs that do not appear in the mileage log. In any event, Mr. Stukes testified that the trips shown on the mileage log were made for the purpose of acquiring farm equipment or supplies, and we found that testimony credible. Therefore, we find that petitioners have met the substantiation requirements of section 274 with respect to trips on dates for which there is a corresponding purchase from a vendor of farm equipment or supplies. Consequently, we hold that petitioners are entitled to deduct the cost of using their truck on those occasions.

Of the 44 occasions on which petitioners claim to have used their truck for the purpose of acquiring farm supplies or equipment, there are records which confirm farm-related purchases

on 22 of those occasions (or within a day or two of the claimed date for those occasions).[2]  The total number of miles petitioners drove the truck for the purpose of acquiring farm equipment or supplies on those 22 occasions was 2,368. Petitioners did not present receipts for the actual cost of this use, but we may apply the standard mileage rate to determine the allowable deduction.[3]  The standard mileage rate for 2002 was 36.5 cents per mile.  Accordingly, the total allowable expense for farm-related use of the truck amounted to $864.32.

Petitioners' mileage log contains three entries pertaining to automobile maintenance and repair that are corroborated by bank records, showing purchases of $224.99.[4]  In addition, petitioners submitted a credit card receipt for $100 of repairs to the truck.

---

[2]The dates of use that are matched by substantiating purchases are:  Feb. 2 and 18; Mar. 3, 13, 16, and 18; May 6, 7, and 24; July 5 and 17; Aug. 5, 14 (two purchases on Aug. 14), and 31; Sept. 1, 2, 3 (two purchases on Sept. 3), 16, and 21; Oct. 1 and 10; and Nov. 29.

[3]The standard mileage rate is a matter of administrative convenience by which a taxpayer may compute the amount of deductible automobile expenses using a standard rate rather than separately establishing the amount of an expenditure for travel or transportation.  Sec. 1.274-5(j), Income Tax Regs., in part, grants the Commissioner the authority to establish a method under which a taxpayer may use mileage rates to substantiate, for purposes of sec. 274(d), the expense of using a vehicle for business purposes.  See Rev. Proc. 2001-54, 2001-2 C.B. 530.

[4]These dates are:  Mar. 13, Mar. 16, and Nov. 29.  The corresponding claimed expenses are $141.79, $69.20, and $14.

Thus, petitioners have substantiated that they spent $324.99 for maintenance and repair of the truck.

The deduction for automobile expenses based on the standard rate may be used only in lieu of all operating and fixed costs of the automobile allocable to business purposes such as depreciation, maintenance and repairs, tires, gasoline (including all taxes thereon), oil, insurance, and license and registration fees. See sec. 1.274-5(j)(2), Income Tax Regs.; Rev. Proc. 2001-54, 2001-2 C.B. 530. As stated previously, petitioners are entitled to a deduction based on the standard rate. This amount ($864.32) exceeds the amount of the deduction to which petitioners would be entitled for the corroborated maintenance and repair of the truck ($324.99).

On Schedule F of their 2002 return, petitioners claimed $850 of expenses for purchase of chemicals for use on their farm. Petitioners' mileage log, described supra, indicates that petitioners purchased chemicals from Home Depot on various occasions in 2002. Petitioners' bank records establish that payment was made to Home Depot at or near the date indicated by petitioners on nine occasions. The total amount of these purchases was $491. Consequently, we hold that petitioners are entitled to a deduction of $491 for farm chemicals.

Other amounts petitioners claimed as deductible farm expenses and disallowed by respondent include custom hire

($1,314), depreciation ($1,599), fertilizers ($550), insurance ($1,200), supplies purchased ($150), and taxes ($123.52). Of these amounts, we find substantiation for $39.87 for supplies.[5] In addition, we accept Mr. Stukes's testimony that petitioners paid $1,200 for farm insurance for 2002. We therefore hold that these amounts are allowable deductions.

The amounts for custom hire and depreciation were unsubstantiated. The amounts claimed as deductions for fertilizers and taxes were also unsubstantiated. As there is no rational basis upon which we can estimate the amounts of these expenses, we hold that they are not deductible.

Issue 2. Schedule A Deductions

We now turn to the amount of the excess unreimbursed employee and other miscellaneous expenses deduction to which petitioners are entitled. On Schedule A of their 2002 return, petitioners reported itemized deductions of $72,921. Respondent disallowed $39,048 of this amount, which consisted of claimed unreimbursed employee business expenses of $7,930, attorney's and accountant's fees of $32,610, and tax preparation fees of $20, reduced by 2 percent of petitioners' adjusted gross income.[6]

---

[5]Petitioners' mileage records and corresponding bank records show purchases of supplies on Sept. 3 and Oct. 1.

[6]See supra note 1.

The unreimbursed employee business expenses consisted of job search expenses incurred by Mr. Stukes. Mr. Stukes worked in the computer industry, and during part of 2002 had been employed in Austin, Texas, as a software development manager for a company that produced energy software. In 2002, he was involuntarily terminated from that job, which led him to file a complaint with the Equal Employment Opportunity Commission (EEOC), alleging that his termination was the result of age discrimination. While that matter was pending, Mr. Stukes commenced an intensive search for a new job and succeeded in finding employment in January of 2003. During his search for employment, Mr. Stukes provided his attorney with documentation to assist with the preparation of the EEOC proceeding. He testified that this documentation had subsequently been destroyed.

Job search expenses are deductible under section 162(a) to the extent they are incurred in searching for new employment in the employee's same trade or business. See Primuth v. Commissioner, 54 T.C. 374, 377-378 (1970). However, if the employee is seeking a job in a new trade or business, the expenses are not deductible under section 162(a). See Frank v. Commissioner, 20 T.C. 511, 513-514 (1953). Job search expenses include preparation expenses, postage, and travel and transportation expenses. See Murata v. Commissioner, T.C. Memo. 1996-321.

Petitioners' claimed deduction for job search expenses of $7,930 consisted of:  The cost of transportation to job interviews, the cost of retaining a search firm to assist with the search, and the cost of preparing and printing Mr. Stukes's calling cards, résumé, and envelopes.  Respondent does not dispute that petitioners would be entitled to deduct these expenses if they substantiated them adequately, but respondent maintains that they failed to do so.

As discussed supra, section 274, which imposes strict substantiation requirements, applies to transportation expenses involving a "passenger automobile".  In order to establish the number of miles Mr. Stukes drove pursuant to his job search, petitioners submitted a log captioned "Job Search Mileage Expenses/Deductions" (petitioners' job search mileage log) which was not prepared contemporaneously with the interviews but rather was prepared on the basis of contemporaneous calendar records and bank statements that show costs incurred on specific dates.

It appears from the record that Mr. Stukes was terminated from his employment in June 2002.  We find that petitioners' job search mileage log, taken together with the calendar, bank records, and Mr. Stukes's credible testimony, substantiates the transportation expense in search of a job between June and

December 2002, to the extent of 1,137 miles.[7]  The standard

mileage rate for 2002 was 36.5 cents per mile.[8]  Consequently, the

total allowable mileage expense is $415.

Petitioners incurred expenses in retaining a search firm to

help Mr. Stukes with his job search.  We find that petitioners'

records and Mr. Stukes's testimony substantiate these expenses to

the extent of $1,300.

Petitioners also incurred expenses in preparing and printing

Mr. Stukes's calling cards, résumé, and envelopes.  We find that

petitioners' records and Mr. Stukes's testimony substantiate

these expenses to the extent of $1,100.

On Schedule A of their 2002 return, petitioners reported

attorney's fees and accountant's fees of $32,610, all of which

was disallowed by respondent.  The attorney's fees stem from a

controversy involving the sale of real property in May of 2001.

Petitioners had acquired the property (the Lakeshore property) in

2000.  At the time of acquisition, petitioners intended to

renovate the Lakeshore property and resell it at a profit.

Petitioners were successful, and they reported $7,633 of capital

---

[7]In reaching this amount, we excluded miles driven before
Mr. Stukes was terminated from his job, miles driven in pursuit
of the Equal Employment Opportunity Commission (EEOC) claim, and
miles for which there is no corresponding bank record or calendar
entry.

[8]See supra note 3.

gain from the sale of the Lakeshore property on their 2001 Federal income tax return.

Difficulty arose at the time of closing the sale of the Lakeshore property in 2001. Petitioners believed that the real estate agent who had organized the sale had damaged the Lakeshore property and the contents of the house, consisting of furnishings, appliances, and other personal property.[9] Petitioners therefore refused to pay the realtor's commission and instead placed an amount equal to the realtor's commission in an escrow account. When negotiation and mediation attempts failed, the realtor brought suit against petitioners in the District Court of Llano County, Texas, seeking payment of the commission as well as recovery of attorney's fees. Petitioners counterclaimed, alleging negligence, conversion, breach of contract, and violation of the Texas Deceptive Trade Practices-Consumer Protection Act set forth in Tex. Bus. & Com. Code Ann. secs. 17.41-17.63 (Vernon, 2002). Specifically, petitioners alleged that they had been deprived of personal property consisting of household furnishings and appliances that had been in the Lakeshore property. The realtor prevailed in the district court proceeding, and the amount of the realtor's commission was released from the escrow account. The realtor was also awarded

---

[9]At the trial of this case, Mr. Stukes testified that the personal property was already in the house when petitioners bought it.

his attorney's fees of $12,750, which petitioners paid in September of 2002. During 2002, petitioners paid their attorney[10] for services in connection with the lawsuit brought by the realtor and paid $250 for mediation services. We are unable to determine the exact amount that petitioners paid their attorney because although petitioners submitted bank records which show that such payments were made, they redacted the amounts.

Respondent contends that petitioners have not shown that the Lakeshore property was other than their second home, for which Schedule A itemized deductions are not available. Further, respondent contends that even if Schedule A itemized deductions were appropriate in connection with the lawsuit involving the Lakeshore property, petitioners have not shown the extent to which the litigation costs were related to the realtor's demand for the commission on the sale of the property as opposed to petitioners' counterclaims with respect to damage to their personal property.

Payment of litigation costs may result in a tax benefit in one of three ways. Section 162(a) governs the deductibility of litigation costs as a business expense. Section 162(a) allows an individual to deduct all of the ordinary and necessary expenses of carrying on his trade or business. Closely related to this

---

[10]At trial, petitioners conceded that they had erroneously included in the Schedule A amount some payments to their attorney that had been made in 2001.

provision is section 212, which allows an individual to deduct all of the ordinary and necessary expenses paid or incurred in: (1) Producing income, (2) managing, conserving, or maintaining property held for the production of income, or (3) determining, collecting, or refunding a tax. Sections 162(a) and 212 are considered in pari materia, except the income-producing activity of section 162(a) is a trade or business whereas the income-producing activity of section 212 is a pursuit of investing or other profit-making that lacks the regularity and continuity of a business. Guill v. Commissioner, 112 T.C. 325, 328 (1999). A deduction under 162(a) reduces gross income to arrive at adjusted gross income, while a deduction under section 212 reduces adjusted gross income to arrive at taxable income.[11] Id. Neither party contends that the Lakeshore property was property used in a trade or business under section 162.

A third possible treatment of litigation costs that may confer a tax benefit is as a capital expenditure. See sec. 1221; Woodward v. Commissioner, 397 U.S. 572, 575 (1970). Litigating costs that are incurred in connection with the sale of a capital asset are capital expenditures. Sec. 1211(b)(1). A capital asset is property held by the taxpayer and not specifically excluded from capital asset status by section 1221. Sec.

---

[11]The sec. 212 deduction is reported on Schedule A and is subject to the 2-percent floor. See supra note 1.

1221(a).  The regulations under section 1221 provide that "Property held for the production of income, but not used in a trade or business of the taxpayer, is not excluded from the term 'capital assets'".  Sec. 1.1221-1(b), Income Tax Regs.

The Lakeshore property was a capital asset in petitioners' hands, and petitioners properly reported the gain on the sale of the Lakeshore property as capital gain in 2001.  Petitioners' expenditures for the legal fees and expenses arose in connection with the disposition of the Lakeshore property, rather than with its conservation or maintenance, and are therefore capital expenditures.

Respondent contends that the legal costs borne by petitioners did not relate to the sale of the Lakeshore property but rather, at least in part, to petitioners' counterclaim against the realtor for damages with respect to petitioners' personal property.  Consequently, according to respondent, the legal costs are personal items which under section 262 are not deductible.

The proper characterization of legal fees and expenses is governed by the "origin of the claim" test.  Woodward v. Commissioner, supra at 577-578.  The object of the "origin of the claim" test is to find the transaction or activity from which the taxable event proximately resulted.  United States v. Gilmore, 372 U.S. 39, 47 (1963).  The origin is determined by analyzing

the facts and determining the nature of the transaction.  Keller
St. Dev. Co. v. Commissioner, 688 F.2d 675, 681 (9th Cir. 1982),
affg. T.C. Memo. 1978-350.

Petitioners do not dispute that commissions are generally
payable to a realtor in connection with the sale of property.
Petitioners believed that the commission they owed the realtor
should have been reduced or entirely offset by damages due to
them from the realtor.  Petitioners withheld the realtor's
commission in an attempt to ensure that they would be compensated
for the loss allegedly caused by the realtor.  A lawsuit ensued,
and petitioners incurred legal fees in defending their actions.

But for the sale of the Lakeshore property, petitioners
would not have incurred realtor's commission.  Had they not
disputed the realtor's commission, petitioners would not have
incurred the legal fees at issue.  Thus, the origin of the
realtor's claim and the proximate cause of all of petitioners'
legal fees was the sale of the Lakeshore property, a capital
asset in the hands of petitioners.  Therefore, we hold that
petitioners' payment of legal fees in 2002 constituted a capital
expenditure.[12]

---

[12]Petitioners showed that they paid $21.64 for the purchase
of tax preparation software.  This expense might be deductible
but for the fact that it appears to have been incurred and paid
in 2003.  Therefore, respondent properly disallowed this amount
for 2002.

Petitioners may offset any capital gains they had in 2002 with their capital losses, and they are allowed an additional capital loss deduction of up to $3,000 per year for the excess losses that cannot be offset by capital gains. Sec. 1211(b). Petitioners' excess capital losses may be carried over to subsequent years. Sec. 1212(b).

On their 2002 return, petitioners reported a capital loss carryover of $38,427 from 2001 as well as a short-term capital loss from 2002. The expenses petitioners incurred in 2002 relating to the sale of the Lakeshore property in 2001 should be aggregated with (and increase) the capital loss carryover petitioners already reported for 2002.

Petitioners realized no tax benefit in 2002 from the payment of attorney's fees relating to the disposition of their capital asset in 2001. However, those expenditures may be beneficial in future periods. Only the year 2002 is before us; we do not address the treatment of petitioners' capital losses in subsequent years.

To reflect the foregoing and concessions by the parties,

Decision will be entered under Rule 155.