T.C. Memo. 2018-80

UNITED STATES TAX COURT

SKY M. LUCAS, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 24111-16.                    Filed June 11, 2018.

<u>Kevin Noel Kemp</u>, for petitioner.

<u>Rose E. Gole</u> and <u>Gennady Zilberman</u>, for respondent.

MEMORANDUM OPINION

VASQUEZ, <u>Judge</u>:  In this case, respondent determined a deficiency in

petitioner's Federal income tax of $1,760,709 for 2010.

[*2]   After concessions,[1] the remaining issue for decision is whether petitioner is entitled to a deduction for legal and professional fees for the 2010 and 2011 tax years.[2]

Background

The parties submitted this case fully stipulated under Rule 122.[3]   Our findings of fact consist of the stipulated facts and facts drawn from the stipulated exhibits.  The stipulation of facts, the supplemental stipulation of facts, and the attached exhibits are incorporated herein by this reference.  Petitioner resided in New Hampshire at the time the petition was filed.

---

[1]  The parties filed two stipulations of settled issues, in which they made several concessions for 2010 and for several years not in issue.  See infra note 2.  Because it is unclear how these concessions will affect the calculation of the 2010 deficiency, we will require a Rule 155 computation.

[2]  The notice of deficiency makes adjustments to petitioner's returns for tax years 2009, 2010, 2011, and 2012 but determines a deficiency only for 2010.  Because respondent's adjustments have not resulted in any deficiencies for 2009, 2011, or 2012, we do not have jurisdiction over those years.  See Martz v. Commissioner, 77 T.C. 749 (1981).  However, part of petitioner's 2010 deficiency is attributable to adjustments to petitioner's 2011 net operating loss.  We may compute the correct tax liability for a year not in issue when such a computation is necessary to determine the correct tax liability for a year that has been placed in issue.  Lone Manor Farms, Inc. v. Commissioner, 61 T.C. 436, 440 (1974), aff'd, 510 F.2d 970 (3d Cir. 1975).

[3]  Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

[*3] I.    Vicis Capital, LLC

Petitioner formed Vicis Capital, LLC (Vicis), with two other partners in 2004; each partner owned a one-third interest.  Vicis was an investment adviser for several funds (Vicis Funds) including Vicis Capital International Fund (International Fund).  The Vicis Funds paid Vicis a management fee of 1.5% of assets under management per annum.  Vicis also received performance fees equal to 20% of profits earned by the Vicis Funds during the year.  Between February 2005 and December 2008, Vicis' assets under management grew from approximately $290 million to approximately $5.6 billion.

Under its advisory agreement with the International Fund, Vicis could elect to defer all or a portion of the management and performance fees payable by the International Fund for payment in subsequent years.  If Vicis elected to defer management or performance fees, the deferred fees were invested in the International Fund portfolio, and the amount of the deferred fees ultimately distributed would depend on the performance of the portfolio from deferral until distribution.  Vicis elected to defer a portion of its International Fund performance fees for each of 2006, 2007, and 2008.

Vicis' fortunes changed after the onset of the 2008 financial crisis.  From December 2008 through September 2009, investors in the Vicis Funds requested

[*4] approximately $3 billion in redemptions. Vicis began liquidating its portfolio in September 2009, and Vicis' principals decided to wind down operations in January 2010. Vicis' deferred payment plan with the International Fund terminated in February 2010, and the deferred performance fees were distributed to Vicis. As of September 27, 2010, the Vicis convertible portfolio was completely liquidated.

## II.    Petitioner's Divorce

Petitioner and his former wife, Margaret Lucas, were married on July 2, 1994. Ms. Lucas filed for divorce on January 28, 2008. Between the date of the divorce filing and the date the divorce was granted, petitioner received $48,723,169 in distributions from Vicis.[4] While the divorce action was pending, petitioner was not involved with any business or employment activity other than Vicis.

The largest issue in the divorce was the valuation and equitable distribution of petitioner's interest in Vicis including the nearly $47 million in distributions

---

[4] The parties to the divorce stipulated that $2 million of this amount constituted a loan from Vicis; net distributions totaled $46,723,169.

[*5] made to petitioner.[5]  Ms. Lucas argued that the distributions were part of the marital estate even though petitioner received them after she had filed for divorce.

A final divorce hearing was held from April 18 through 21, 2011.  The Family Division of the Circuit Court of Pinellas County, Florida (circuit court), determined that Vicis was without a fair market value at the time of the trial and valued petitioner's interest in Vicis at $5,095,000 as of the divorce filing date.  The circuit court found that, of the nearly $47 million in distributions, approximately $4.7 million represented deferred compensation attributable to petitioner's predivorce earnings and was a marital asset subject to equitable distribution.  The circuit court held that the remaining amount of the distributions was a nonmarital asset and therefore not subject to equitable distribution.   After determining that the total marital estate was worth $15,522,158, the circuit court awarded Ms. Lucas their Belleair, Florida, property and an equalizing cash payment of $6,676,412.

As a result of these proceedings, petitioner paid several million dollars of legal and professional fees.[6]  On his 2010 Schedule A, Itemized Deductions,

---

[5]  Neither Vicis nor the International Fund were parties to the divorce suit.

[6]  Petitioner hired a law firm to represent him in the divorce.  He also hired a consulting group and an expert witness to help resolve the valuation issues

(continued...)

[*6] petitioner deducted legal and professional fees of $1,337,158.  For 2011 petitioner deducted legal and professional fees of $1,644,261 on his Schedule E, Supplemental Income and Loss.  The parties have stipulated that these amounts were incurred by petitioner with respect to issues related to Vicis in the divorce.

On August 12, 2016, respondent timely issued a statutory notice of deficiency for 2010.  Respondent determined a deficiency of $1,760,709, disallowing, in part, deductions for petitioner's nonbusiness bad debts and miscellaneous itemized deductions.  Respondent also disallowed, in part, petitioner's claimed deduction for Schedule E expenses for 2011.  Petitioner timely petitioned this Court.

## Discussion

### I.  Burden of Proof

As a general rule, the Commissioner's determination of a taxpayer's liability in a notice of deficiency is presumed correct, and the taxpayer bears the burden of proving that the determination is incorrect.[7]  Rule 142(a); Welch v. Helvering, 290

---

[6](...continued)
concerning his interest in Vicis.

[7] Petitioner does not contend that the burden of proof should be shifted to respondent pursuant to sec. 7491(a), and there is no justification on this record for doing so.  See Higbee v. Commissioner, 116 T.C. 438, 442-443 (2001).

**[*7]** U.S. 111, 115 (1933).  Deductions are a matter of legislative grace, and the taxpayer ordinarily bears the burden of proving entitlement to any deduction claimed.  Rule 142(a); INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992); New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440 (1934).

II.      Deductions for Legal and Professional Fees

Petitioner claimed deductions for legal and professional fees for both 2010 and 2011.  Petitioner argues that he is entitled to deductions for these fees under section 162(a) because they were paid to defend a claim for profits earned in his trade or business.  Petitioner implicitly argues that he is entitled to these deductions under section 212 if section 162 does not apply.

Respondent contends that petitioner cannot claim deductions for the legal and professional fees under either section 162(a) or section 212 because they are nondeductible personal expenses under section 262.  For the following reasons, we sustain respondent's determination.

Section 162(a) governs the deductibility of litigation costs as a business expense.  Section 162(a) allows an individual to deduct all of the ordinary and necessary expenses of carrying on his or her trade or business.  Section 212 governs the deductibility of litigation costs as an itemized deduction, when the costs are incurred as a nonbusiness profit-seeking expense.  Section 212 allows an

**[\*8]** individual to deduct all of the ordinary and necessary expenses paid or incurred in: (1) producing income, (2) managing, conserving, or maintaining property held for the production of income, or (3) determining, collecting, or refunding any tax. Sections 162(a) and 212 are considered in pari materia, except for the fact that the income-producing activity of the former section is a trade or business whereas the income-producing activity of the latter section is a pursuit of investing or other profit-making that lacks the regularity and continuity of a business.[8] See Woodward v. Commissioner, 397 U.S. 572, 575 n.3 (1970); United States v. Gilmore, 372 U.S. 39, 44-45 (1963); Bingham's Tr. v. Commissioner, 325 U.S. 365, 374-375 (1945). No deduction is allowed with respect to personal, living, or family expenses. Sec. 262.

In Gilmore, 372 U.S. at 48, the Supreme Court held that whether legal fees are deductible expenses or nondeductible personal expenses depends upon

---

[8] A deduction of litigation costs under sec. 162(a) may be more desirable to an individual than a deduction under sec. 212. The primary advantage to a deduction under sec. 162(a), vis-a-vis a deduction under sec. 212, rests on each deduction's effect on gross income and adjusted gross income. A deduction under sec. 162(a) is subtracted in full from gross income to arrive at adjusted gross income. A deduction under sec. 212 is subtracted from adjusted gross income to arrive at taxable income and is subject to certain floor limitations in sec. 67(a). The benefit from a deduction of litigation costs under sec. 212 may also be limited by application of the alternative minimum tax. Guill v. Commissioner, 112 T.C. 325, 328-329 (1999); see also sec. 56(b); Benci-Woodward v. Commissioner, T.C. Memo. 1998-395.

[*9] whether the claim arises in connection with the taxpayer's profit-seeking activities or his personal activities. Under this "origin of the claim" test, the Court held that legal expenses paid to defeat claims arising from a marital relationship were personal and nondeductible. Id. at 51-52. The Court noted that it is irrelevant whether the taxpayer's income-producing property would be affected by the outcome of the divorce proceeding. See id. at 48. For ascertaining the source of claims giving rise to legal expenses, we apply a "but for" test. See Fleischman v. Commissioner, 45 T.C. 439, 446 (1966). If the claim could not have existed but for the marriage relationship, the expense of defending it is a personal expense and not deductible. See id.

To be sure, a deduction for legal expenses is not necessarily precluded because the taxpayer's underlying claim arose in a divorce action. Barry v. Commissioner, T.C. Memo. 2017-237. The regulations provide a limited exception under section 212 for divorce-related legal fees incurred for the production or collection of taxable alimony income. See Wild v. Commissioner, 42 T.C. 706, 710-711 (1964); sec. 1.262-1(b)(7), Income Tax Regs. The legal costs of securing rights to other forms of income are also deductible. See Hahn v. Commissioner, T.C. Memo. 1976-113 (allowing a section 212 deduction for legal fees relating to obtaining possession of, and income rights to, a corporation

[*10] already owned by the taxpayer). A taxpayer may also deduct legal fees incurred to resist actions by the taxpayer's ex-spouse that interfere with the business activities of the taxpayer's corporation. See Liberty Vending, Inc. v. Commissioner, T.C. Memo. 1998-177.

On the record before us, it is clear that but for her marriage to petitioner, Ms. Lucas would have no claim to petitioner's interest in Vicis. Ms. Lucas' claim to the Vicis distributions stemmed entirely from her marriage to petitioner. Thus, under Gilmore, the legal and professional fees paid by petitioner are personal and not deductible.

Petitioner argues that facts in this case are similar to those in Hahn, in which we held that the taxpayer's legal fees were deductible. We disagree. In Hahn, the taxpayer's deductible legal fees were incurred securing income from jointly owned property over which her ex-husband had taken possession. As we explained in Barry v. Commissioner, T.C. Memo. 2017-237, the Hahn taxpayer's deductible legal fees were business connected. In contrast petitioner's legal fees had no connection to Vicis' investment advisory business. They were incurred defending petitioner's Vicis ownership and distributions from equitable distribution in a divorce action.

[*11] Petitioner has not demonstrated that the expenses are otherwise deductible under section 162(a) or section 212. In the divorce action at issue, petitioner was neither pursuing alimony from Ms. Lucas nor resisting an attempt to interfere with his ongoing business activities. Cf. Liberty Vending, Inc. v. Commissioner, T.C. Memo. 1998-177; sec. 1.262-1(b)(7), Income Tax Regs. Furthermore, petitioner engaged in little trade or business activity during 2010 and 2011. Vicis began liquidating its portfolio in September 2009 and thereafter petitioner was not engaged in any business activity other than a limited management role with Vicis. Petitioner has not established that Ms. Lucas' claim related to the winding down of Vicis. Nor has petitioner established that the fees he incurred to defeat her claim were "ordinary and necessary" to his trade or business. We therefore sustain respondent's disallowance of petitioner's deductions for legal and professional fees for 2010 and 2011.

In reaching all of our holdings herein, we have considered all arguments made by the parties, and to the extent not mentioned above, we find them to be irrelevant or without merit.

**[\*12]** To reflect the foregoing,

<u>Decision will be entered</u>

<u>under Rule 155</u>.