# United States Tax Court

T.C. Memo. 2023-42

WILLIAM FRENCH ANDERSON AND KATHRYN D. ANDERSON,
Petitioners

v.

COMMISSIONER OF INTERNAL REVENUE,
Respondent

————

Docket No. 23789-16.                                    Filed March 28, 2023.

————

*Charles David Harrison*, for petitioners.

*William F. Castor* and *Vassiliki Economides Farrior*, for respondent.


## MEMORANDUM FINDINGS OF FACT AND OPINION

PARIS, *Judge*: By notice of deficiency dated August 11, 2016, respondent determined deficiencies in petitioners' income tax of $97,686 and $34,047 for 2013 and 2014, respectively.

After concessions, the issue for decision is whether petitioners may deduct legal expenses of $292,175 and $68,120 reported on Schedule C, Profit or Loss From Business, on their 2013 and 2014 tax returns, respectively.

Petitioners bear the burden of proof. *See* Rule 142(a).[1]

---

[1] Unless otherwise indicated, all statutory references are to the Internal Revenue Code, Title 26 U.S.C., in effect at all relevant times, all regulation references are to the Code of Federal Regulations, Title 26 (Treas. Reg.), in effect at all relevant times, and all Rule references are to the Tax Court Rules of Practice and Procedure.

[*2]                                    FINDINGS OF FACT

I.      *Background*

Petitioners, William French Anderson (Dr. Anderson) and Kathryn D. Anderson (Dr. Kathryn Anderson), husband and wife, resided in California at the time they filed the Petition in this case. The parties have stipulated that venue for any appeal in this case is the U.S. Court of Appeals for the Tenth Circuit. *See* § 7482(b)(2) (providing that decisions of the Tax Court "may be reviewed by any United States Court of Appeals which may be designated by the Secretary and the taxpayer by stipulation in writing"); *Greene v. Commissioner*, T.C. Memo. 1996-531, 1996 WL 687032, at *1 n.2.

During the years relevant to this case, Dr. Anderson was a physician, geneticist, and molecular biologist. He is considered a pioneer in the field of gene therapy. Both Dr. Anderson and Dr. Kathryn Anderson are renowned pediatric specialists, she as a pediatric surgeon and director of multiple hospital pediatric surgery programs and he as a pediatric geneticist. He previously discovered genetic and other treatments for cancer, immune deficiencies, and other illnesses, and has successfully worked with pharmaceutical companies to bring them to market. Dr. Anderson has held multiple leadership positions in medical institutions on the East Coast and oversaw multiple research laboratories.

Beginning in 1992 Dr. Anderson served as Director of the Gene Therapy Laboratories at the University of Southern California (USC) Keck School of Medicine. Dr. Anderson holds over 34 patents related to gene therapy, including several related to the use of the molecule interleukin-12 (IL-12). While employed at USC, Dr. Anderson was involved in numerous business ventures in the biomedical industry. Through one such venture, Farmal, LLC (Farmal), Dr. Anderson, along with other scientists and investors, sought to develop IL-12 and bring it to market as a cancer treatment that could reduce the side effects of radiation and chemotherapy.

During Dr. Anderson's years at USC, his research assistant, a Chinese national and licensed medical doctor, actively participated in Dr. Anderson's research and was included by name as a co-inventor of IL-12 in the patent issued in July 2003. Soon after the patent application was filed, she approached Dr. Anderson with a proposal to bring the IL-12 research to a new laboratory in China. After unsuccessful meetings

[*3] with government officials in China in July 2003, Dr. Anderson refused the medical research laboratory proposal.

In July 2004 Dr. Anderson was arrested in Los Angeles on allegations of sexual abuse of a minor, the daughter of his research assistant at the USC Gene Therapy Laboratories. The criminal acts were alleged to have occurred at petitioners' home, where Dr. Anderson tutored the minor and taught her martial arts to improve her self-confidence. Dr. Anderson had agreed to tutor the minor at the request of her mother because she was struggling both academically and socially. He did not receive payment and was not in the trade or business of tutoring or of martial arts instruction. Dr. Anderson was found guilty of the charges and sentenced to 14 years' imprisonment. Dr. Anderson was discharged for cause from the university following his arrest and subsequent criminal conviction. The conviction was affirmed on appeal to the California Court of Appeal, which found that the evidence demonstrated that Dr. Anderson was guilty of the criminal conduct. *People v. Anderson*, 144 Cal. Rptr. 3d 606, 640 (Ct. App. 2012).

II.    *Petitions for Writs of Habeas Corpus*

A.    *State Habeas Case*

In 2011 Dr. Anderson filed a petition for writ of habeas corpus in the California Court of Appeal (state habeas case). *In re Anderson*, No. B232746, 2013 WL 4759680 (Cal. Ct. App. Sept. 5, 2013). In the state habeas case, Dr. Anderson was represented by Douglas W. Otto, an attorney based in California.

In the state habeas case, Dr. Anderson challenged his conviction on four grounds, all relating to claims of ineffective assistance of counsel and prosecutorial misconduct in connection with a surreptitious recording of a conversation between Dr. Anderson and the minor that led to his arrest. Oral argument was held on April 9, 2013. The Court of Appeal denied Dr. Anderson's petition by unpublished opinion issued on September 5, 2013. *Id.* at *17. Dr. Anderson petitioned the Supreme Court of California for review of the Court of Appeal's decision, and the Supreme Court of California denied his petition on December 11, 2013.

B.    *Federal Habeas Case*

In December 2014 Dr. Anderson, acting pro se, filed a petition for writ of habeas corpus in the U.S. District Court for the Central District

[*4] of California (federal habeas case). *Anderson v. Perez*, No. CV 14-09463R, 2016 WL 8078147 (C.D. Cal. Nov. 8, 2016). The petition set forth nine grounds for relief, the ninth of which alleged: "Petitioner is Entitled to Habeas Corpus Relief because Newly Discovered Evidence Establishes his Actual Innocence."

On January 2, 2015, Dr. Anderson filed a memorandum of points and authorities in support of his petition. He raised five arguments, four of which dealt with his claims of ineffective assistance of counsel or allegations of misconduct by the government. Dr. Anderson additionally argued that new evidence demonstrated that the charges against him were fabricated by the minor's mother as part of an effort to sabotage his business and gain control over the IL-12 intellectual property following the failure of their biotech startup Farmal.

On August 19, 2015, Dr. Anderson filed a reply to respondent's answer to petition for writ of habeas corpus (reply), alleging that the minor's mother was involved in espionage and leveled the charges against him in an effort to hide her deliberate attempts to sabotage the biotech startup. Attached to the reply as exhibit G was the declaration of Daniel Haste.

Mr. Haste is an information technology (IT) consultant with over 30 years' experience. He began providing IT services to Dr. Anderson in 1994. Following Dr. Anderson's 2004 arrest, Mr. Haste assisted Dr. Anderson's criminal defense team as a digital forensic consultant. After Dr. Anderson was convicted in 2006, he continued to perform data recovery and digital forensic analysis for Dr. Anderson in connection with the state and federal habeas cases, including investigation emails and other digital evidence related to the failure of Farmal and the potential theft of Dr. Anderson's intellectual property. On the basis of the research of Mr. Haste and other experts who worked with his legal team, Dr. Anderson became convinced that his former colleague had deliberately sabotaged Farmal and had stolen his intellectual property related to the use of IL-12.[2] Noting that she had held a research position in a nearby laboratory while he practiced on the East Coast and that she had moved to southern California in the early 1990s, around the same time that he did, Dr. Anderson came to believe that she had long ago

---

[2] Dr. Anderson believes, on the basis of articles and other evidence uncovered in investigations after the years at issue, that his former colleague now heads a research lab in Qingdao, a city in Shandong Province, China, where she works on drugs and medication exploiting the IL-12 discovery.

**[*5]** selected him and his research as a target for theft and joined his research team to gain access to his research.

On November 8, 2016, the magistrate in the federal habeas case filed a document titled Report and Recommendation, recommending that the district court deny Dr. Anderson's petition. In recommending that the petition be denied, the reviewing magistrate found that the evidence presented by Dr. Anderson "d[id] not demonstrate that [Dr. Anderson] was convicted as an innocent person." *Anderson*, 2016 WL 8078147, at *25. The district court accepted the magistrate's recommendation and entered a judgment denying Dr. Anderson's petition for writ of habeas corpus on January 24, 2017.

III.  *Legal Fees and Other Expenditures*

A.  *Legal Representation*

Mr. Otto represented Dr. Anderson in the state habeas case, including appeals.

During 2013 petitioners paid Mr. Otto $292,175 in legal expenses. Out of those funds, Mr. Otto paid from Dr. Anderson's trust account $24,410 to Attorney Eric Multhaup for assistance on the state habeas case; $575 to BEKTEK; $21,000 to Pablo Valencia, an expert in signal analysis; $5,302 to Attorney G. Paul; $1,250 and $3,137 to audio experts Brian Shepard and Yi Xu, respectively; $10,000 to Attorney Dennis Fischer for assistance on the appeal of the state habeas case; and $1,500 to Tully Investigations, a consulting firm engaged to attempt to find and interview the now-adult accuser. The remaining $225,000 went to Mr. Otto directly.

During 2014 petitioners paid legal expenses totaling $68,120.[3] They paid $60,000 cash to Mr. Otto for continued work on Dr. Anderson's state habeas case.[4] They additionally paid $4,385 to the Phelps Law

---

[3] The parties stipulated that the $68,120 in legal expenses was paid to Mr. Otto. The evidence shows, however, that only $60,000 was paid to Mr. Otto while the remaining $8,120 was paid by Dr. Kathryn Anderson to various persons as described above. The Court is not bound by stipulations of fact that appear contrary to the facts disclosed by the record. *See* Rule 91(e); *Estate of Eddy v. Commissioner*, 115 T.C. 135, 137 n.4 (2000).

[4] During 2014 Mr. Otto paid $480 to the law firm Russell & Russell and another $4,883 (in the form of two checks) to Mr. Multhaup. These amounts appear to have

[*6] Group for assistance in obtaining documents, $1,500 to Attorney Kent A. Russell to assist Mr. Otto on the state habeas case, and $3,000 to Daniel Haste for website redesign to promote "[Dr.] Anderson's overall business image" and engage in "legal advocacy as instructed by Doug Otto."[5]

### B. *Daniel Haste*

As discussed *supra*, Mr. Haste is an IT consultant who performed data recovery and digital forensic analysis for Dr. Anderson in connection with the state and federal habeas cases. During the years at issue, Mr. Haste also worked directly for petitioners and was paid by check from Dr. Kathryn Anderson's bank account.

In 2014 Mr. Haste sent petitioners no fewer than three invoices. The first, dated September 18, 2014, was for $3,000 for "Labor, Anderson Website September redesign and upgrade" and contained the following comment: "Bookkeepers Notes: This project promotes Anderson's overall business image as well as legal advocacy as instructed by Dough Otto, Esq. Either 'marketing,' 'IT', or 'legal services/consultants' or any combination is customary." The second and third invoices, dated November 22 and December 10, 2014, respectively, were for $5,000 each and related to expenses, interviews and meetings, and research and investigation regarding potential conflicts of interest and undisclosed representation. Dr. Kathryn Anderson paid each invoice by separate personal check. Petitioners offered no evidence that any invoices were paid to Mr. Haste in 2013.

### IV. *Tax Returns*

Petitioners timely filed joint federal individual income tax returns for 2013 and 2014. On their 2013 return they reported a business loss of $292,300. On Dr. Anderson's Schedule C attached to that return they reported gross receipts of $584 and legal and professional services expenses of $292,175, for a net loss of $291,591.[6] Petitioners also claimed deductions on Schedule A, Itemized Deductions,

---

been paid out of the $60,000 paid to Mr. Otto and do not represent additional payments by petitioners.

[5] These amounts, totaling $68,885, were then reduced by $765 for unspecified "accounting fees."

[6] Petitioners' 2013 return also included Dr. Kathryn Anderson's Schedule C, on which petitioners reported a net loss of $709.

[*7] totaling $105,377 and a personal exemption of $7,800. They also disclosed a nontaxable state refund of $2,638. They reported a total tax of $50,971, including alternative minimum tax of $20,581.

On their 2014 return petitioners reported business income of $2,274. On Dr. Anderson's Schedule C attached to that return they reported gross receipts of $70,702 and legal and professional services expenses of $68,120,[7] for a net profit of $2,582.[8] Petitioners also claimed itemized deductions on Schedule A totaling $58,722 and a personal exemption of $7,900. Petitioners reported a total tax of $22,538, including alternative minimum tax of $2,573.

V.    *Notice of Deficiency*

Respondent examined petitioners' returns and determined deficiencies of $97,686 and $34,047 for 2013 and 2014, respectively. The deficiencies were determined on the basis of the following adjustments:

|  | *2013* | *2014* |
|---|---|---|
| State Refunds, Credits, or Offsets | $2,638 | $35,130 |
| Sch C2 – Legal and Professional Services | 292,175 | 68,120 |
| SE AGI Adjustment[9] | (42) | (4,812) |
| Itemized Deductions | 13,733 | 1,969 |
| Exemptions | 7,800 | --- |

Respondent concedes that petitioners' state tax refunds are not taxable. This item will not be further addressed.

---

[7] Petitioners paid a total of $68,885 to Mr. Otto, the Phelps Law Group, Mr. Russell, and Mr. Haste, but they reduced that amount by $765 for "accounting fees." The Court deems petitioners to have conceded that the $765 is not deductible.

[8] Petitioners' 2014 return also included Dr. Kathryn Anderson's Schedule C, on which petitioners reported a net loss of $308.

[9] Respondent's adjustments to self-employment tax deductions, itemized deductions, and personal exemptions are computational, and the Court will not further address them.

**[\*8]**    Respondent issued the notice of deficiency on August 11, 2016, and petitioners timely petitioned the Court for redetermination.

OPINION

I.    *Overview*

On their 2013 and 2014 tax returns petitioners claimed deductions on Schedule C for legal expenses of $292,175 and $68,120, respectively, relating to amounts paid to Mr. Otto for legal services rendered in connection with Dr. Anderson's state and federal habeas cases. The parties agree that those amounts were paid but disagree as to whether they were deductible business expenses or nondeductible personal expenses.

In general, the Commissioner's determination set forth in a notice of deficiency is presumed correct, and the taxpayer bears the burden of proving that the determination is in error. Rule 142(a); *Welch v. Helvering*, 290 U.S. 111, 115 (1933).[10] Deductions are a matter of legislative grace, and the taxpayer bears the burden of proving that he or she is entitled to any deduction claimed. *See* Rule 142(a); *Deputy v. du Pont*, 308 U.S. 488, 493 (1940); *New Colonial Ice Co. v. Helvering*, 292 U.S. 435, 440 (1934).

II.    *Legal Fees*

A.    *Section 162*

Section 162(a) allows a deduction for all ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business. An ordinary and necessary expense is one which is appropriate and helpful to the taxpayer's business and results from an activity that is common and accepted practice in the business. *Amdahl Corp. & Consol. Subs. v. Commissioner*, 108 T.C. 507, 523 (1997); *Blossom Day Care Ctrs., Inc. v. Commissioner*, T.C. Memo. 2021-87, at \*36. Whether a payment qualifies for a deduction under section 162(a) is a factual issue which must be decided on the basis of all relevant facts and circumstances. *See Commissioner v. Heininger*, 320 U.S. 467, 475 (1943). To prove entitlement to deduct an expense, the taxpayer must

---

[10] Pursuant to section 7491(a), the burden of proof as to factual matters shifts to the Commissioner under certain circumstances. Petitioners have neither alleged that section 7491(a) applies nor established compliance with its requirements. Petitioners therefore bear the burden of proof.

**[\*9]** prove not only the fact of the expenditure but also the business purpose (or other deductible character) of the expense. "Business expenses deductible from gross income include the ordinary and necessary expenditures directly connected with or pertaining to the taxpayer's trade or business . . . ." Treas. Reg. § 1.162-1(a). The taxpayer must show that a reported business expense was incurred primarily for business rather than personal reasons and that there was a proximate relationship between the expense and the business. *Walliser v. Commissioner*, 72 T.C. 433, 437 (1979); *Rogers v. Commissioner*, T.C. Memo. 2014-141, at \*18. No deduction is allowed for personal, living, or family expenses. § 262(a).

B.    *Origin of the Claim*

The deductibility of legal fees depends on the origin and character of the claim for which the expenses were incurred and whether the claim bears a sufficient nexus to the taxpayer's business or income-producing activities. *See United States v. Gilmore*, 372 U.S. 39, 48–49 (1963). The Supreme Court has stated that "the origin and character of the claim with respect to which an expense was incurred, rather than its potential consequences upon the fortunes of the taxpayer, is the controlling basic test." *Id.* at 49. If the claim arose "in connection with the taxpayer's profit-seeking activities," the fees are deductible. *Id.* at 48. If not, then they are not deductible, regardless of "the consequences that might result to a taxpayer's income-producing property" from losing the case. *Id.* Ascertainment of a claim's origin and character is a factual determination made on the basis of the facts and circumstances of the litigation. *Id.* at 47–49; *Stewart v. Commissioner*, T.C. Memo. 2010-184, 2010 WL 3239176, at \*7. Public policy does not prohibit the deduction of legal fees relating to criminal activity so long as the legal fees are an ordinary and necessary expense of a trade or business. *Commissioner v. Tellier*, 383 U.S. 687, 694–95 (1966).

Petitioners maintain that the legal fees at issue are deductible business expenses. In their seriatim Opening Brief petitioners argue that the legal fees at issue are deductible business expenses because the claim with respect to which they were incurred (that is, the criminal charges against Dr. Anderson) "arose from his gene therapy business and the for-profit business activity of bringing a cancer treatment drug . . . to market." Petitioners maintain that new evidence discovered in 2013 and 2014, during the preparation of the state and federal habeas cases, reveals an extensive scheme by Dr. Anderson's former colleague

**[\*10]** to sabotage his business and steal his intellectual property.[11] That alleged theft, petitioners argue, is the proximate cause of the charges brought against Dr. Anderson, and thus the legal fees expended in 2013 and 2014 in pursuit of the writs of habeas corpus were deductible business expenses.

In their seriatim Reply Brief, petitioners narrow their argument somewhat. Describing the legal expenses as "investigatory legal expenses," petitioners contend that the fees were incurred entirely to investigate the conduct of Dr. Anderson's former colleague. Petitioners allege that the so-called investigatory legal expenses were paid to Mr. Haste, through Mr. Otto, to investigate potential corporate sabotage and intellectual property theft by Dr. Anderson's former colleague. Petitioners claim that Mr. Haste's investigation revealed extensive wrongdoing by Dr. Anderson's former colleague, that Mr. Haste was employed by Mr. Otto to investigate this wrongdoing, and that the legal fees at issue paid for that investigation.

Petitioners' first argument is unavailing. Dr. Anderson was charged with and convicted of various counts of sexual abuse of a minor. Petitioners are correct that public policy does not prohibit the deduction of legal fees relating to criminal activity so long as the legal fees are an ordinary and necessary expense of a trade or business. *Commissioner v. Tellier*, 383 U.S. at 694–95. In Dr. Anderson's case, however, the criminal acts were alleged to have occurred at petitioners' home, where Dr. Anderson tutored the minor academically and provided her with martial arts training. Those activities were personal, occurring at petitioners' private residence and arising out of Dr. Anderson's personal relationship with his former employee and her daughter. Dr. Anderson did not receive payment for either the tutoring or the martial arts training, and he was not in the trade or business of providing either service. The charges did not involve Dr. Anderson's gene therapy business or any other trade or business or activity engaged in for the production or collection of income. The connection between his arrest

---

[11] In the Court's Order dated September 28, 2021, the Court granted respondent's Motion in Limine to preclude any evidence or arguments that Dr. Anderson was framed on false charges. In contravention of that Order, petitioners continue to argue in their Opening Brief that Dr. Anderson was falsely accused of the criminal charges for which he was convicted and that these accusations were part of the corporate sabotage and intellectual property theft scheme. Dr. Anderson was convicted by a jury of the charges brought against him, and the California Court of Appeal upheld that conviction. *Anderson*, 144 Cal. Rptr. 3d at 640. The Court will not further address this argument.

[*11] and his occupation was tangential. *Cf. Argyle v. Commissioner*, T.C. Memo. 2009-218, 2009 WL 2972888, at *4 (disallowing deduction for CPA's legal fees in defending against criminal charges brought by client's employee after he kissed her during an evening spent at his home over 40 miles away from client's business), *aff'd*, 397 F. App'x 823 (3d Cir. 2010); *Siket v. Commissioner*, T.C. Memo. 1978-124 (disallowing deduction for legal fees paid by police officer to defend against charge of off-duty criminal assault against other police officers). Any economic loss to or other impact on Dr. Anderson's gene therapy business following the conviction was a collateral consequence and not its origin.

With respect to petitioners' second argument, the Court recognizes that, "when appropriate, litigation costs must be apportioned between business and personal claims." *Guill v. Commissioner*, 112 T.C. 325, 331 (1999). The Court agrees that investigating and combatting potential security threats, such as sabotage and intellectual property theft, are ordinary and necessary business expenses. Although the criminal charges against Dr. Anderson generally relate to his personal conduct and relationship with the minor, petitioners' investigation into and analysis of the alleged malfeasance by the former colleague directly pertain to Dr. Anderson's gene therapy business, and legal fees expended specifically to those ends are deductible business expenses. *See id.*

Petitioners' framing of the facts, however, is inconsistent with the evidence. Petitioners contend that the legal fees were entirely "investigatory," that the purpose of hiring Mr. Otto was to investigate the collapse of Dr. Anderson's companies and the theft of the intellectual property he was developing, and that it was Mr. Otto who employed Mr. Haste to conduct his investigation.[12] Petitioners' documentation of their legal expenses shows otherwise. In 2013 petitioners paid $292,175 to Mr. Otto. Mr. Otto's records reflect that a portion of these funds was paid to various attorneys, audio experts, and investigators, but Mr. Haste was not among those payees. The documents detail the work performed, the amount of time spent, and the cost. The descriptions of work contain no reference to investigatory work of the nature alleged, instead primarily focusing on Dr. Anderson's ineffective assistance of counsel argument, analysis of the audio recording used against Dr.

---

[12] Dr. Anderson additionally testified that he has filed a civil action against his former colleague with respect to the alleged intellectual property theft. The record does not indicate when this lawsuit was filed or whether any legal expenses were paid in connection with that lawsuit during the years at issue.

**[\*12]** Anderson during his criminal trial, and attempts to contact Dr. Anderson's now-adult accuser. No invoices or other documentation for 2013 reference Mr. Haste or his investigation, and there is no evidence that any of the 2013 legal expenses went toward researching, investigating, or analyzing the corporate sabotage or espionage allegations. Rather, the 2013 legal fees all expressly pertain to the state habeas appeal, on which Dr. Anderson raised claims of ineffective assistance of counsel, challenged the integrity of the recording, and alleged other misconduct by government officials.

For 2014 the parties have stipulated that petitioners paid legal expenses totaling $68,120 to Mr. Otto. The record indicates, however, that only $60,000 of the stipulated legal expenses was paid to Mr. Otto while the remaining amounts were paid to Mr. Russell, Mr. Haste, and the Phelps Law Group. Petitioners did not introduce invoices or other documentation describing the work Mr. Otto performed or whether any portion of it relates to Dr. Anderson's business. Nor is there any evidence that the fees paid to Mr. Russell or the Phelps Law Group were business related. Rather, Dr. Anderson's testimony and documentation show that Mr. Russell provided assistance with the state habeas case (which did not involve the corporate sabotage allegations) while the Phelps Law Group assisted in obtaining documents from Mr. Otto. These expenses, then, are personal expenses and not deductible.

Only the $3,000 paid to Mr. Haste, as evidenced by the invoice dated September 18, 2014, relates to Dr. Anderson's gene therapy business. That invoice shows that Mr. Haste performed IT services for Dr. Anderson's website under the instruction of Mr. Otto, including legal advocacy and promotion of Dr. Anderson's business image. While the invoice contains no reference to the alleged wrongdoing by Dr. Anderson's former colleague, the work detailed in the invoice is clearly a business expense, and the Court will allow a deduction in that amount. Similarly, the two additional 2014 invoices from Mr. Haste, for $5,000 each, do detail work performed in the course of his investigation. Those invoices were paid by Dr. Kathryn Anderson in December 2014. The Court finds that these invoices represent additional business expenses and will allow a further deduction of $10,000.

III.    *Conclusion*

For the foregoing reasons, respondent's disallowance of petitioners' legal expense deduction for 2013 is sustained. Petitioners are entitled to deduct legal expenses of $13,000 for 2014.

**[\*13]** The Court has considered all of the arguments made by the parties, and to the extent they are not addressed herein, they are considered moot, irrelevant, or otherwise without merit.

To reflect the foregoing,

*Decision will be entered under Rule 155.*